PEOPLE v SIEBERT

PEOPLE v OATMAN

PEOPLE v JEFFERSON (AFTER REMAND)

Docket Nos. 98267, 98509, 98603. Argued March 9, 1995 (Calendar
Nos. 4-6). Decided August 31, 1995. Rehearings denied *post*,
1212.

Douglas Siebert and Raymond Oatman, pursuant to plea agree-
ments that included sentence agreements of twenty to thirty
years, pleaded guilty in the Detroit Recorder's Court, George
W. Crockett III, J., of delivery and conspiracy to deliver be-
tween 225 and 650 grams of a controlled substance. Over the
prosecutor's objection, the court imposed sentences lower than
those called for in the agreements. The court denied the pros-
ecutor's motions to withdraw from the agreements. The Court
of Appeals, DOCTOROFF, C.J., and WEAVER and WHITE, JJ.,
reversed, stating that when the judge concluded that he could
not sentence pursuant to the plea agreements, he should have
provided the prosecutor with an opportunity to withdraw from
the agreements, as implied by *People v Killebrew*, 416 Mich
189 (1982), but that, because the defendants had performed
pursuant to the agreements, they should be provided an oppor-
tunity on remand to obtain specific performance of the agree-
ments (Docket Nos. 146736, 146737). The defendants appeal.

Mary Jefferson, pursuant to a plea agreement that included a
sentence agreement of ten to thirty years, pleaded guilty in the
Detroit Recorder's Court, M. John Shamo, J., of delivery of 225
to 650 grams of cocaine. Over the prosecutor's objection, the
court imposed a sentence lower than that called for by the
agreement. The Court of Appeals, GILLIS, P.J., and GRIBBS and
SULLIVAN, JJ., peremptorily reversed in an unpublished order
(Docket No. 129838). The Supreme Court vacated the order and
directed that the case be given plenary consideration, 437 Mich
1034 (1991). On remand, the Court of Appeals, MURPHY and
CAVANAGH, JJ. (DOCTOROFF, C.J., concurring), finding *Siebert*
controlling, vacated the sentence and remanded to permit the
prosecutor to withdraw from the agreement (Docket No.
142617). The defendant appeals.

In *Jefferson*, in an opinion by Justice BOYLE, joined by Chief

Justice BRICKLEY, and Justices RILEY and WEAVER, the Supreme Court *held:*

A court may not accept a plea bargain containing a sentence agreement, but impose a sentence lower than agreed to. Because such action trespasses on the prosecutor's charging authority, the people must be given an opportunity to withdraw from the agreement.

1. The exclusive authority of the trial court to impose sentence does not allow it to enforce only parts of a plea bargain. A court may not keep the prosecutor's concession by accepting a guilty plea to reduced charges and yet impose a lower sentence than the one for which the prosecutor and the defendant bargained. Accepting a plea to a lesser charge over the prosecutor's objection impermissibly invades the constitutional authority of the prosecutor. When a court receives information that in its judgment dictates a lower sentence, it must alert the prosecutor of the sentence it intends to impose and allow the prosecutor to withdraw from the plea.

2. Public confidence in a system increasingly driven by negotiation can only be preserved by protecting the defendant's constitutional rights, upholding the prosecutor's executive authority, and preserving the trial court's independence. The optimum bargained disposition is that result which best harmonizes these core interests. Where the negotiations do not produce harmony, care must be taken to ensure the least damage possible to each of these concerns. When the bargain goes awry, the variation of agreements and remedies admit of no hard and fast rule for resolution.

3. The trial court, having accepted a plea to a lesser charge pursuant to a sentence agreement, erred when it failed to announce the sentence it intended to impose and then allow the prosecution to withdraw consent to the plea agreement. Thus, *Jefferson* must be remanded to the trial court where, after hearing from the parties, the court should permit the defendant to affirm the plea and impose the sentence specified in the agreement or permit the prosecution to withdraw. If the court decides to reject the agreement, the prosecution should be informed of the intended sentence before it must decide whether to object and withdraw. Nothing would preclude the parties from reaching a new agreement or from convincing the judge to impose a sentence that will satisfy the prosecutor and the defendant.

Affirmed.

In *Siebert* and *Oatman,* the judgment of the Court of Appeals was affirmed by equal division.

*Jefferson* affirmed.

Justice BOYLE, joined by Chief Justice BRICKLEY and Justice RILEY, would affirm the decisions of the Court of Appeals in *Siebert* and *Oatman* to the extent those decisions hold that the trial courts erred in denying the prosecutor's motion to withdraw from the plea agreements after the courts accepted the pleas without honoring the sentence agreements.

Justice LEVIN, writing separately, agreed with the majority that the Court of Appeals correctly held that when a prosecutor enters into a sentence agreement with a defendant, he may seek to withdraw from the agreement if the court departs below the agreed-upon sentence. In the circumstances of particular cases, however, the defendant may be entitled to specific performance of the agreed-upon sentence. In these cases, the reduced sentences should be affirmed. The agreed-upon sentences coincided with the mandatory minimum term of imprisonment prescribed by statute, the statute also providing, however, that the court may depart from the minimum if it finds that there are substantial and compelling reasons to do so. The sentencing judges found such reasons.

Two of the six Court of Appeals judges that considered the matter were, and two justices of the Supreme Court are, of the opinion that the sentencing judge, contrary to the sentence agreements, may depart below the minimum. While Justice LEVIN agrees with the Court of Appeals majority and the majority in these cases that the sentence agreements, and the statute providing for departure downward, should not be construed to permit departure below the agreed-upon minimum, this is a new rule, which, in light of the records in the instant cases, should be applied prospectively. Therefore, the decision of the Court of Appeals should be modified to provide that the sentences imposed by the trial court be affirmed.

Justice MALLETT, joined by Justice CAVANAGH, dissenting, stated that under MCL 333.7401(4); MSA 14.15(7401)(4) the sentencing authority is within the exclusive purview of the judiciary. The judiciary is always allowed to depart from mandatory minimum sentences when there are substantial and compelling reasons.

The trial judge has exclusive authority with respect to sentencing. The Legislature has specifically conferred discretion on trial judges when sentencing defendants, and has further empowered trial court judges to deviate from mandatory minimum sentences when confronted by substantial and compelling reasons. Even where there is a sentence agreement, a trial court is required to exercise discretion when imposing a sentence, and may not abdicate this function by allowing sentence

agreements to control the sentencing process. In addition, the prosecution may not dictate a sentence through agreements or recommendations. It is wrong to suggest that a trial judge invades the prosecutor's charging authority when imposing a lesser sentence because the defendants fully cooperated with law enforcement officials.

In these cases, the prosecution agreed that in exchange for cooperation with law enforcement officials the defendants would be charged with a lesser crime. In all three cases, the defendants' cooperation was exemplary. The prosecution had full cooperation that allowed it to inform the judge that a sentencing agreement had been reached; it received what it bargained for. Thus, the trial judge was empowered to impose lesser sentences on each defendant. If the prosecution wanted to debate the sentences imposed, its sole remedy should have been to appeal on the ground that the trial court deviated from the mandatory minimum sentences without substantial and compelling reasons.

Justice WEAVER took no part in the decision of *Siebert* and *Oatman.*

201 Mich App 402; 507 NW2d 211 (1993) affirmed.

202 Mich App 606; 509 NW2d 776 (1993) affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *Thomas M. Chambers* and *George E. Ward,* Assistant Prosecuting Attorneys, for the people.

*Craig A. Daly, P.C.,* for defendant Siebert.

State Appellate Defender (by *Anne Yantus*) for defendant Jefferson.

*Mark J. Kriger* for defendant Oatman.

BOYLE, J. In *People v Killebrew,* 416 Mich 189; 300 NW2d 834 (1982), we approved of sentence bargaining and held that when a judge plans to impose a sentence that exceeds the sentence recommendation or agreement, the defendant may

withdraw his plea. These consolidated cases present the question whether a prosecutor may withdraw from a plea bargain that includes a sentence agreement when the court intends to impose a sentence lower than the agreement calls for.

We hold that a court may not accept a plea bargain containing a sentence agreement but impose a lower sentence than that agreed to. Because such action trespasses on the prosecutor's charging authority, the people must be given an opportunity to withdraw from the agreement.

We affirm the Court of Appeals in *Jefferson* and would affirm in *Siebert* and *Oatman* insofar as these decisions held that a prosecutor may withdraw in this situation.[1]

I

A

Codefendants Raymond Oatman and Douglas Siebert were charged, in one information, with delivery of cocaine in an amount exceeding 650 grams,[2] and conspiracy to deliver cocaine in an amount exceeding 650 grams.[3] Conviction of either of these offenses carries a mandatory penalty of life imprisonment without parole. In another information, they were charged with conspiracy to possess marijuana with intent to deliver. A third information charged defendant Siebert with conspiracy to gamble and gambling or taking bets.

At the codefendants' pretrial conferences, they advised the trial court judge that each of them had entered into a plea agreement with the prosecutor.

---

[1] For reasons stated herein, we do not approve of the Court of Appeals discussion concerning specific performance.

[2] MCL 333.7401(1), (2)(a)(i); MSA 14.15(7401)(1), (2)(a)(i).

[3] MCL 750.157a; MSA 28.354(1) and MCL 333.7401(1), (2)(a)(i); MSA 14.15(7401)(1), (2)(a)(i).

The nearly identical written agreements, signed by the parties, were incorporated into the record at the prosecution's request. Each agreement called for the defendant to provide information to law enforcement agencies, to cooperate with them, and to testify truthfully at any court proceedings. The agreements provided that

[a]fter the Prosecutor's Office has satisfied itself with [the defendant's] compliance . . . , the Prosecutor's Office agrees to allow [the defendant] to plead guilty to the offenses of Conspiracy to Deliver 225 grams or more but less than 650 grams of cocaine and Delivery of 225 grams or more but less than 650 grams of cocaine, contrary to MCLA 333.7401(2)[(a)](ii) [MSA 14.15(7401)(2)(a)(ii)], with a sentence agreement of twenty (20) to thirty (30) years.

Twenty years was the statutory minimum sentence at the time these defendants were charged. The trial court accepted defendants Siebert's and Oatman's pleas to these offenses on October 31 and November 1, 1990, respectively. Before defendant Oatman's plea, the prosecutor specifically raised the sentence agreement with the court:

*Mr. Bernier:* Your Honor, I also indicate that we had in there a plea agreement of 20 to 30 years. I understand the Court does not enter into plea agreements with the parties.

*The Court:* Well, that's simply redundant, because that's the required sentence.

*Mr. Bernier:* I understand, your Honor. I just wanted to point out that it is a term of the agreement, but I understand the Court's philosophy on the matter.

Sentencing was deferred to enable the court to obtain presentence reports and to allow Siebert

and Oatman to perform according to their agreements. The court held a joint presentence conference on October 16, 1991, at which the judge stated that he felt free to impose a minimum sentence below twenty years if he found substantial and compelling reasons to do so, pursuant to MCL 333.7401(4); MSA 14.15(7401)(4). Following this, he asked whether this would influence the prosecutor's position regarding the plea agreements. The prosecutor responded that, depending on the sentence the court planned to impose, he would withdraw his consent to the plea agreement, pursuant to *People v Killebrew.*

At defendant Siebert's sentencing hearing, law enforcement officers testified that his cooperation and assistance had been extensive and very helpful, and that, in addition to the cooperation necessary to satisfy his plea agreement, the defendant participated in three additional cases. Primarily on this basis, defense counsel argued that the court was presented with substantial and compelling reasons to impose a sentence lower than the statutory minimum. The court announced that it would sentence the defendant to five to thirty years imprisonment. The prosecutor immediately moved to withdraw from the plea agreement. The court noted and denied the motion.

Although defendant Oatman had not assisted law enforcement agencies as had defendant Siebert, the prosecutor acknowledged that "he was always willing and able to cooperate." The prosecutor argued that the court should not reduce the sentence further on the basis of the defendant's willingness to cooperate because the possibility of cooperation was the quid pro quo for the plea bargain. The court sentenced defendant Oatman to three to thirty years imprisonment. As he did at defendant Siebert's sentencing, the prosecutor im-

mediately moved to withdraw from the agreement. The motion was denied.

The prosecutor appealed, and the Court of Appeals reversed. See 201 Mich App 402; 507 NW2d 211 (1993). The Court concluded that the trial court erred in denying the prosecutor's motions to withdraw from the plea agreements:

> When the court sentenced defendants to terms of years less than those set forth in the sentence agreements, the prosecutor then had a right to withdraw from the agreements, subject to defendants' right—arising from their performance of the provisions of the agreements requiring that they cooperate with state and federal drug investigations by providing information, testimony, and other assistance—to specific performance of the agreements, at their option. [201 Mich App 430-431.]

We granted the defendants' applications for leave to appeal, and directed that the case be submitted with *People v Jefferson*. See 446 Mich 865 (1994).

B

Defendant Mary Jefferson was originally charged with delivery of cocaine in an amount exceeding 650 grams. The defendant entered a plea agreement with the prosecutor that called for her to provide "all information, known to her, concerning the trafficking of controlled substances," including knowledge about two defendants who had been charged along with her in the same information. The agreement stated that if she satisfied the agreement, the prosecutor would "agree to a plea of guilty of Delivery of 225 grams or more, but less than 650 grams of a powder containing cocaine," and that the defendant should

be "sentenced to a period of incarceration of Ten (10) to Thirty (30) years, subject to the Court's approval." Ten years was the statutory minimum sentence at the time defendant Jefferson was charged. The trial court accepted Jefferson's plea, noted this provision, and affirmed that he could not deviate from this sentence.

Eleven months later at defendant Jefferson's sentencing hearing, a special agent from the Drug Enforcement Administration testified that his agency was pleased with the defendant's cooperation. Defense counsel asked the court to impose a minimum sentence below the ten years called for by the agreement. The prosecutor replied that the court should either honor the sentence agreement or else allow the prosecutor to withdraw. The court, however, did not address the prosecutor's suggestion that he wished to withdraw from the agreement, but rather proceeded to announce its sentence of five to thirty years imprisonment.

The prosecutor appealed, and the Court of Appeals peremptorily reversed. We vacated that order and directed that the case be given plenary consideration. 437 Mich 1034 (1991). On remand, the majority stated that, although it disagreed with the decision in *People v Siebert,* it was bound to follow it under Administrative Order No. 1990-6. 202 Mich App 606 (1993). We granted the defendant's application for leave to appeal, and ordered that the case be submitted with *Siebert* and *Oatman.* 446 Mich 865 (1994).

II

The threshold legal issue in these cases is whether, in a case involving a plea bargain that

contains a sentence agreement,[4] the prosecution may withdraw its consent to the plea when the court intends to impose a sentence lower than that called for by the agreement.

As a matter of practical reality, bargaining and concessions have become a permanent feature of the judicial landscape. Plea bargains, however, are more than contracts between two parties. As the judicial representative of the public interest, the trial judge is an impartial party whose duties and interests are separate from and independent of the interests of the prosecutor and defendant. The court's interest is in seeing that justice is done. In the context of plea and sentence agreements, the court's interest in imposing a just sentence is protected by its right to reject any agreement, except that which invades the prosecutor's charging authority.[5] A trial court may reject pleas to

[4] These cases involve sentence agreements. As Justice LEVIN notes, the Court of Appeals stated that sentence agreements were substantively different from sentence recommendations. See *post* at 526, n 15 and accompanying text. We disagree. The terms are not mutually exclusive. See 1 Wright, Federal Practice & Procedure (2d ed), § 175.1, p 641. For purposes of withdrawing from agreements that include a guilty plea and specify or recommend sentence dispositions, the critical distinction is not whether the arrangement is styled as an agreement or a recommendation, but its terms. It is the nature of the bargain that controls, not the nomenclature.

[5] These cases are complicated by the fact that trial court discretion has been constrained by the Legislature. If judges reject agreements, they may find themselves in the position of imposing mandatory minimum life sentences which they may believe to be unjust. Obviously, however, a disagreement with the Legislature's sentencing philosophy does not permit deviation from the legislative will.

Outside the context of mandatory minimum sentences for certain drug offenses, it is much more obvious that a trial court may not accept a guilty plea to a reduced charge, yet impose a sentence lower than the parties agreed on over the objection of the prosecutor. Where a prosecutor allows a defendant charged with first-degree murder, for example, to plead guilty of second-degree murder, which carries no mandatory minimum sentence, for a sentence of twenty to forty years, it seems indisputable that the trial court could not accept the plea to second-degree murder and, over the prosecutor's objection, sentence the defendant to less than twenty to forty years' imprisonment.

reduced charges, and it may protect its sentencing discretion by rejecting sentence agreements. In this sense, neither the prosecutor nor the defendant can dictate the sentence.

However, it follows from *People v Killebrew, supra,* 416 Mich 189, that a prosecutor, like a defendant, is entitled to learn that the judge does not intend to impose the agreed-upon sentence, to be advised regarding what the sentence would be, and given an opportunity to withdraw from the plea agreement. The procedures outlined in *Killebrew* provide that the defendant may withdraw his plea when a sentence agreement or recommendation will not be satisfied in order to protect the defendant's right "to make a knowing and intelligent waiver of his right to trial and its companion rights." *Id.* at 210. The prosecution has an equal, though different, constitutional interest at stake insofar as it is constitutionally entrusted with authority to charge defendants. See, generally, *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672, 683-684; 194 NW2d 693 (1972). In a case where the prosecutor has lowered the charges against the defendant—reducing either the number of counts charged or the level of those charges —with the understanding of a certain minimum sentence, the agreement is conditioned upon imposition of the specified sentence. Were a court allowed to maintain its acceptance of the plea over the prosecutor's objection, it would effectively assume the prosecutor's constitutional authority to determine the charge or charges a defendant will face. See *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115, 121; 215 NW2d 145 (1974) ("[a] circuit judge does not enjoy supervisory power over a prosecuting attorney").

Therefore, the trial court's exclusive authority to impose sentence does not allow it to enforce

only parts of a bargain. A court may not keep the prosecutor's concession by accepting a guilty plea to reduced charges, and yet impose a lower sentence than the one for which the prosecutor and the defendant bargained. Accepting a plea to a lesser charge over the prosecutor's objection impermissibly invades the constitutional authority of the prosecutor. *Genesee Prosecutor v Genesee Circuit Judge, supra,* 391 Mich 121. When a court receives information that in its judgment dictates a lower sentence, it must alert the prosecutor of the sentence it intends to impose and allow the prosecutor to withdraw from the plea.[6]

The prosecutor's right to withdraw is recognized under FR Crim P 11(e), which forms the basis for the procedures set forth in *Killebrew.* See 416 Mich 205, n 8. A district court that keeps a defendant's guilty plea is prohibited from "sentencing a defendant to a sentence less severe than that provided for in the plea agreement accepted by the court." *United States v Semler,* 883 F2d 832, 833 (CA 9, 1989). This rule was applied to facts similar to those at issue here in *United States v Mukai,* 26 F3d 953 (CA 9, 1994). The defendant in *Mukai* entered into a plea agreement with the government that called for a sentence of "imprisonment for not less than five (5) years and not more than seven (7) years." *Id.* at 954. The agreement provided that "if the defendant's cooperation and truthful testimony is of substantial assistance in the investigation and/or prosecution of others," the government would file a motion "permitting the Court to sentence the defendant to less than the otherwise applicable guideline range and

---

[6] We agree with the Court of Appeals that the constitutional prohibition on double jeopardy, US Const, Ams V, XIV; Const 1963, art 1, § 15, would not bar reinstatement of the original changes. See 201 Mich App 418-426.

within the range contemplated by the plea agreement." *Id.* at 954-955. The district court sentenced the defendant to probation for five years.

On appeal by the prosecutor, the United States Court of Appeals for the Ninth Circuit reversed, holding that a sentencing court that decides it must impose a less severe sentence than called for by an agreement may not keep the guilty plea over the objection of the prosecutor:

> The time for the court to evaluate whether the impact of exceptional circumstances renders the agreement inappropriate is prior to acceptance and, as the court explained in *Semler,* if the court later finds the disposition in the plea agreement objectionable it "should not reduce the sentence unilaterally in such cases, but rather should withdraw its acceptance of the plea agreement and permit the parties to renegotiate a more appropriate sentence or opt for trial." [26 F3d 955-956.]

The court rejected the defendant's argument that under § 5K1.1, which authorizes a sentencing court to depart from the guidelines, the government has no control over the extent of the departure. The court agreed with previous decisions holding that "the dictates of Rule 11, which do not authorize the district court to modify a plea agreement, trump the discretion afforded a district court under § 5K1.1." *Id.* at 956.

III

There is no allegation that defendants and their lawyers did not understand that they had bargained for a specific sentence and no allegation of inadequate advice in taking the pleas. The dispositive question is therefore whether the sentences imposed violated the agreements at issue.

In *Jefferson,* the record unquestionably establishes that the parties and the trial judge understood that a sentence agreement existed and that it was a term of the agreement necessary for the prosecution's consent to the plea. In *Oatman,* the court, when confronted at the plea proceeding with the sentence agreement, ambiguously remarked "[w]ell, that's simply redundant, because that's the required sentence."[7] Where it is clear on the record that a party is relying on an agreement regarding the sentence as part of a plea agreement, it is incumbent on the court at the time of accepting the pleas to clarify whether it is accepting or rejecting the entire agreement or taking it under advisement. MCR 6.302(C)(3). Later, before sentencing in *Siebert* and *Oatman,* the prosecutor observed that if the court sentenced outside the agreement it "would be in essence rejecting the agreement that the parties entered into," and he would have the right to withdraw.

A defendant must clearly understand the terms of the agreement to offer a knowing and voluntary plea. We do not, however, agree with the contention that the prosecutor should not be allowed to withdraw in *Siebert* and *Oatman* because the agreements "did not provide that the court could not depart from the mandatory sentence for substantial and compelling reasons." LEVIN, J., *post* at 537, n 41. An agreement that a defendant will receive a specific sentence needs no further elaboration. A defendant who agrees to a specific sentence as part of a guilty plea to a lesser charge and thereby avoids charges that would require life imprisonment in the event of conviction can certainly claim that the trial court has sentencing

[7] Although the record does not show that the court became aware of the identical term in codefendant Siebert's agreement at the time of the plea, there is no reason to believe the court would have responded differently.

discretion.[8] That is not the same as saying that the prosecutor must consent to the plea. The court rule, MCR 6.301(D), provides that "[t]he court may not accept a plea to an offense other than the one charged without the consent of the prosecutor," in recognition of the fact that consent to a reduced plea is an integral part of the prosecution's charging function. A defendant can merely seek to *enforce* what the prosecutor promised in the agreement, not something better.

We also disagree with the implicit assertion that such agreements must negate ambiguity. See LEVIN, J., *post* at 537, n 41. Negating ambiguity in agreements when none has been suggested will complicate this area of jurisprudence at the plea-taking and appellate stages with no discernible benefit to defendant's legitimate expectations or those of the prosecutor, judge, or public. This is not to say that the parties may not agree that the defendant may argue for a departure or that he will not so argue.[9] It is to say that when the parties do not claim that they did not understand

---

[8] Although it is possible that a defendant might establish that in agreeing to a specific sentence that coincided with the ostensible minimum sentence in MCL 333.7401; MSA 14.15(7401), he was relying on the belief that the trial court could depart below the agreement, that claim is not here made. Even if a defendant established that he relied on incorrect information in deciding to plead guilty, he would only be entitled to withdraw his plea. He would not be entitled to the result proposed in the separate opinion—receipt of a lower sentence.

Whatever error a defendant might establish would not transcend the prosecutor's constitutional charging authority. As noted above, unless the court imposes the sentence specified in the agreement, the prosecutor has not consented to the dismissal of other charges or the defendant's plea to a reduced charge, and there is no plea agreement.

[9] There was no ambiguity in the *Jefferson* agreement. The words "subject to the Court's approval" recite no more than the court rule requires: that the sentence is subject to the Court's approval. Although such terms are not required, it would be helpful to all interested parties if agreements included specific provisions regarding withdrawal, requests for departure, and, in drug cases, departure for substantial and compelling reasons, or if these contingencies were otherwise provided for on the record at the time of the plea. The

the terms of the bargain, this Court should not
impose an analytical framework that requires ne-
gation of possible misunderstandings.

The gloss of contract jurisprudence is here un-
necessary and generally unwise. Defendants make
no claim that the negotiated terms of the agree-
ment were imprecise or unclear. Further, to the
extent we impose this approach on such agree-
ments, we undermine their certainty and their
utility. Defendants may be less likely to offer full
cooperation when they can fall back on contrac-
tual arguments that will permit escape from a
minimum sentence. To the extent that enforce-
ment of the bargained-for sentence becomes more
problematic, prosecutors will be more reluctant to
offer these bargains. The ultimate effect will be to
discourage the very activity most likely to have an
effect on the narcotics traffic—prosecution of those
higher up the chain of distribution.

We hold in *Jefferson* and would hold in *Siebert*
and *Oatman* that the trial court, having accepted
a plea to a lesser charge pursuant to an agreement
for sentence, erred when it failed to announce the
sentence it intended to impose and then allow the
prosecution to withdraw consent to the plea agree-
ment.[10] We would remand each case to the trial
court where, after hearing from the parties, the

---

agreements in *Siebert* and *Oatman* specifically provided that if the
defendants

> should fail to comply with any of the terms of this agreement,
> the Prosecutor's Office will move to set aside this agreement
> and will proceed against [the defendant] with those charges for
> which he was arrested and any other charges allowed by law
> and consistent with the terms of this agreement.

[10] Contrary to the view expressed by Justice MALLETT, this result
actually protects the trial court by distancing the court from the
parties' bargain. When the court becomes involved in negotiating a
sentence that the prosecutor will not appeal, the court is enmeshing
itself in considerations known to the parties when they consummated
the agreement, which are appropriately not within the trial court's
purview.

judge should permit the defendant to affirm the plea and impose the sentence specified in the agreement or permit the prosecution to withdraw. See MCR 6.301(D). If the court decides to reject the agreement, the prosecution should be informed of the intended sentence before it must decide whether to object and withdraw. Nothing precludes the parties from reaching a new agreement or from convincing the judge to impose a sentence that will satisfy the prosecutor and the defendant. We would encourage them to do so.

Because the prosecutor does not seek to set aside these bargains, it is unnecessary to opine whether specific performance is "ordinarily" the appropriate remedy, Levin, J., *post* at 535, or to address defendant's due process arguments. The prosecutor does not contend that defendants should be deprived of the benefits of their bargain, and we do not assume that a judge will refuse to impose the sentence that effectuates the parties' bargains.

IV

Discussion of specific performance is not necessary to disposition of these cases. Nevertheless, given the discussion of "specific performance" of plea agreements in the separate opinion, and the Court of Appeals holding that the defendants could elect specific performance, it is necessary to address the issue.

The essential problem with the separate opinion's discussion of specific performance is that the defendants would be seeking specific performance

The instant cases differ from *People v Fields*, 448 Mich 58; 528 NW2d 176 (1995). The defendant in that case pleaded guilty to the charged offense and the court had authority to depart for substantial and compelling reasons. The prosecutor did not reduce the number or level of charges on the basis of an understanding regarding the sentence.

not from the prosecutor, a party to the agreement who made certain promises, but from the trial court, a party independent of the agreement who did not make any promises in *Siebert* or *Oatman* and who rejected the agreement in *Jefferson.* Not only would this remove the sentencing power from the hands of the trial court, but it commands a result that is not required by *Santobello v New York,* 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971). The prosecutor in *Santobello* promised that if the defendant pleaded guilty of a lesser offense, he would make no recommendation regarding the sentence. A different prosecutor attended the defendant's sentencing, however, and recommended the maximum sentence on the basis of the defendant's criminal record and alleged ties to organized crime. The judge, after stating that he was uninfluenced by that recommendation, imposed the maximum sentence. The United States Supreme Court held that the defendant's conviction should be vacated and remanded to the state court, which would determine whether the defendant should receive specific performance or whether he should be entitled to withdraw his plea.

The central holding of the Court's opinion was that

> when a plea rests in any significant degree on *a promise or agreement of the prosecutor,* so that it can be said to be part of the inducement or consideration, *such promise* must be fulfilled. [*Id.* at 262 (emphasis added).]

The promise at issue in *Santobello* was the prosecutor's promise of no recommendation concerning sentence. The possible remedy of specific performance, therefore, involved performance by the

prosecution of its *own* promise—resentencing the defendant by a different judge without prosecutorial recommendation.

In contrast, the separate opinion and the Court of Appeals apparently envision ordering the sentencing judge—a bystander to the agreement—to specifically perform a promise made by the parties. The Court of Appeals description of *Santobello* differs from the quotation accordingly. It describes *Santobello* as not being about requiring the prosecution to keep its own promises, but about requiring trial courts to perform agreements reached by the parties:

> [O]nce *a trial court* accepts a plea induced by an agreement with a prosecutor, *the terms of that agreement* must be fulfilled. [*Siebert,* 201 Mich App 427 (emphasis added).]

As noted, however, *Santobello* does not propose specific performance by a trial court or by any actor not making the promise at issue. Under Michigan law, the trial judge is not required to enforce a sentence agreement reached by the parties with which the judge does not agree. Thus, the judge may reject the agreement, i.e., allow the parties to withdraw. In a system increasingly driven by the exigencies of plea bargaining, it is imperative that the trial judge retain this historic discretion.

### CONCLUSION

Public confidence in a system increasingly driven by negotiation can only be preserved by protecting the defendant's constitutional rights, upholding the prosecutor's executive authority, and preserving the trial court's independence. The optimum bargained disposition is that result which

best harmonizes these core interests. Where the
negotiations do not produce harmony, care must
be taken to ensure the least damage possible to
each of these concerns. When the bargain goes
awry, the variation of agreements and remedies
admit of no hard and fast rule for resolution. In
these cases the appropriate remedy is to remand
to allow the defendants to affirm their pleas and
bargain for further proceedings if necessary.

Accordingly, we affirm the decision of the Court
of Appeals in *Jefferson* and would affirm in *Siebert*
and *Oatman* to the extent those decisions hold
that "the trial court[s] erred in denying the pros-
ecutor's motion to withdraw from the plea agree-
ments after the court[s] accepted the pleas without
honoring the sentence agreements." *Siebert*, 201
Mich App 430.

BRICKLEY, C.J., and RILEY, J., concurred with
BOYLE, J.

WEAVER, J., concurred with BOYLE, J., only in
*Jefferson*, and took no part in the decision of
*Siebert* and *Oatman*.

LEVIN, J. (*separate opinion*). I agree with the
majority that the Court of Appeals correctly held
that when a prosecutor enters into a sentence
agreement with a defendant, he may seek to with-
draw from the agreement if the court departs
below the agreed-upon sentence. In the circum-
stances of particular cases, however, the defendant
may be entitled to specific performance of the
agreed-upon sentence.

The agreed-upon sentences in the instant cases
coincided with the mandatory minimum term of
imprisonment prescribed by statute, the statute
also providing, however, that the court may depart

from the minimum if it finds that there are substantial and compelling reasons to do so. The sentencing judges found such reasons.

Two of the six Court of Appeals judges that have considered this matter were of the opinion, and two of my colleagues are of the opinion, that the sentencing judge may, contrary to the sentence agreements, depart below the minimum.

While I agree with the Court of Appeals in the instant cases, and the majority in this Court, that the sentence agreements, and the statute providing for departure downward, should not be construed to permit departure below the agreed upon minimum, this is a new rule, which, in light of the records in the instant cases, should be applied prospectively. I would modify the decision of the Court of Appeals to provide that the sentences imposed by the Recorder's Court in the instant cases are affirmed.[1]

I

In these cases consolidated on appeal, the defendants, Douglas Siebert, Raymond Oatman, and Mary Jefferson, were charged with delivery and conspiracy to deliver over 650 grams of cocaine.[2] The penalty is mandatory life in prison without possibility of parole.[3] Pursuant to plea agreements with the Wayne County prosecutor, the defendants

---

[1] In all other respects, the opinion and decision of the Court of Appeals should be affirmed.

[2] MCL 333.7401(1); MSA 14.15(7401)(1), MCL 750.157a; MSA 28.354(1).

Siebert and Oatman were also charged with conspiracy to possess with intent to deliver marijuana. MCL 750.157a; MSA 28.354(1), MCL 333.7401(1); MSA 14.15(7401)(1). Siebert was also charged with gambling, taking bets, and conspiracy to gamble. MCL 750.301; MSA 28.533, MCL 750.157a; MSA 28.354(1).

[3] MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i) and MCL 750.157a; MSA 28.354(1).

pled guilty to the lesser offenses of delivery and conspiracy to deliver between 225 and 650 grams, and agreed to cooperate in drug investigations.

In *Siebert* and *Oatman,* the agreements were for sentences of twenty to thirty years, and, in *Jefferson,* for a sentence of ten to thirty years. Those were the mandatory minimum sentences for delivery and conspiracy to deliver that quantity at the times involved.[4] The statute provides, however, that the "court may depart from the minimum term of imprisonment" for delivery of that quantity "if the court finds on the record that there are substantial and compelling reasons to do so."[5]

The cooperation by defendants in drug investigations so impressed the sentencing judges that, over the prosecutor's objection, Siebert was sentenced to five to thirty years, Oatman to three to thirty years, and Jefferson to five to thirty years, on findings "that there are substantial and compelling reasons" to "depart from the minimum term of imprisonment."

The Court of Appeals in *Siebert/Oatman* reversed, stating that, when the judge concluded that he could not sentence pursuant to the sentence agreements, he should have provided the prosecutor with an opportunity to withdraw from the agreements, but that, because the defendants had performed pursuant to the agreements, they should be provided an opportunity on remand to obtain specific performance of the agreements pro-

---

[4] MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(i) and MCL 750.157a; MSA 28.354(1).

The mandatory minimum sentence at the time of Jefferson's offense was ten years. 1988 PA 47, before amendment by 1989 PA 143.

[5]   The court may depart from the minimum term of imprisonment authorized under subsection (2)(a)(ii), (iii), or (iv) if the court finds on the record that there are substantial and compelling reasons to do so. [MCL 333.7401(4); MSA 14.15(7401)(4).]

viding minimum sentences of twenty to thirty
years in *Siebert/Oatman;*[6] in *Jefferson,* ten to
thirty years.

I am in substantial agreement with the Court of
Appeals in *Siebert/Oatman,* but conclude, for rea-
sons set forth in the introduction and in part V of
this opinion, that this decision—precluding exer-
cise of the power to depart for substantial and
compelling reasons where there is a sentence
agreement—should be given prospective effect and
should not apply in pending cases in which the
defendants have entered into such plea agree-
ments and have been sentenced to terms less than
a mandatory minimum agreed-upon sentence on a
finding of substantial and compelling reasons to
depart.

The prosecutor has not challenged the findings
of substantial and compelling reasons to depart in
the instant cases.[7]

II

The facts and history of proceedings in *Siebert/
Oatman* are set forth in subpart A, and in *Jeffer-
son* in subpart B.

A

In October, 1990, Siebert and Oatman entered

---

[6] *People v Siebert,* 201 Mich App 402; 507 NW2d 211 (1993). In
*Jefferson,* the Court of Appeals ruled similarly, relying on but criticiz-
ing *Siebert,* which was a "first out" decision. *People v Jefferson (On
Remand),* 202 Mich App 606; 509 NW2d 776 (1993).

[7] If a prosecutor has challenged such a finding in a pending case,
the Court of Appeals should consider and decide the issue so raised.

The disposition that I believe to be appropriate would make it
unnecessary to consider and decide whether the prosecutor and a
defendant may enter into an agreement precluding the court from
departing from the minimum term of imprisonment even in a case in
which the court finds, on the basis of information that does not
become available until *after* the plea agreement is first presented to
the court, that there are substantial and compelling reasons within
the meaning of the statute to do so.

into plea agreements with the Wayne County prosecutor's office providing that they would be permitted to plead guilty of the lesser offenses of delivery and conspiracy to deliver between 225 and 650 grams of cocaine. Siebert and Oatman agreed to cooperate with drug investigations by providing information, testimony, and additional necessary assistance. Sentences of twenty to thirty years were agreed upon[8] for the reduced charges. The prosecutor agreed to dismiss other pending charges.[9]

After the pleas were accepted, sentencing was deferred to enable the court to obtain presentence reports and to allow Siebert and Oatman to perform according to their agreements. During the intervening year, Siebert cooperated extensively with state and federal authorities, often at significant personal risk. Oatman was not called upon to do so.[10]

In October, 1991, during the course of a presentence conference, the court said that it "jealously guards its prerogatives with regard to sentencing and has uniformly told parties that it will not be bound by any sentence bargain, agreement, arrangements, or deal," but had overlooked the language of these agreements and that it was "not my

---

[8] MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii) requires imposition of a mandatory sentence of not less than twenty years nor more than thirty years.

[9] When Siebert entered his plea of guilty, the court reminded him that the offenses were "nonprobationable, and they carry a mandatory sentence of a minimum of 20 years a maximum of 30 in prison." Siebert indicated his understanding of the length of the sentence. When Oatman entered his guilty plea, the prosecutor stated that the sentence agreement provided for the mandatory twenty- to thirty-year sentence. The court reminded Oatman of the mandatory minimum sentence. Oatman indicated his understanding of the sentence length.

[10] It appears that Oatman may have played a comparatively minor role in the transaction.

intention then or now to be bound by a sentence agreement, and I did and do feel free to take advantage of " the statutory provision authorizing the court to depart from a mandatory minimum term of imprisonment if it finds on the record that there are substantial and compelling reasons to do so. The prosecutor stated that, if the court chose not to sentence according to the agreements, he would ask the court either to reject the pleas or to permit him to withdraw from the agreements.

At Siebert's sentencing hearing, law enforcement officers attested to his extensive cooperation and assistance. His lawyer asked the court to depart from the mandatory sentence for substantial and compelling reasons on the basis of Siebert's assistance and evidence of his rehabilitation and character. The prosecutor acknowledged that Siebert had complied with the plea agreement and had cooperated fully with authorities. The prosecutor asked the court, nevertheless, to impose the twenty- to thirty-year sentence. The court imposed a sentence of five to thirty years, finding substantial and compelling reasons to depart.

At Oatman's sentencing before the same Recorder's Court judge, his lawyer presented evidence of Oatman's comparatively minor role and of his rehabilitation. The prosecutor acknowledged that Oatman had fulfilled his obligation, and again asked the court to impose a twenty- to thirty-year sentence. The court declined to do so, and sentenced Oatman to three to thirty years, again finding reasons to depart.

B

In June, 1989, Jefferson entered into a plea agreement with the Wayne County prosecutor's office. The agreement provided that Jefferson could

plead guilty of delivery of over 225 but less than 650 grams of cocaine in exchange for truthful testimony and assistance in other drug prosecutions. The agreement provided that Jefferson would be sentenced to ten to thirty years, "subject to the Court's approval."

The court accepted Jefferson's plea and indicated that the sentencing provision was part of the plea agreement. Over the next eleven months, Jefferson provided extensive assistance to both state and federal law enforcement authorities. At the sentencing hearing, her lawyer asked the court to depart from the sentence set forth in the agreement in light of Jefferson's comparatively minor participation in the underlying crime and her performance pursuant to the plea agreement. Law enforcement officers testified regarding Jefferson's participation beyond the terms of the agreement.

The prosecutor, nevertheless, asked the court to adhere to the sentence agreement or to permit him to withdraw from the agreement. Jefferson's lawyer argued that the sentence agreement provided for court discretion in sentencing. The prosecutor contended that the court could only approve or disapprove the agreement with the sentence provision, subject to permitting either party to withdraw if the sentence agreement was not adhered to. The court expressed its reluctance to sentence Jefferson to any jail time, in light of the mitigating information, and its displeasure with the prosecutor's office for insisting that Jefferson be subjected to the mandatory sentence. Jefferson was sentenced to five to thirty years.

III

The Court of Appeals in *Siebert* reversed in a

full opinion.[11] The Court said that neither *People v Killebrew,* 416 Mich 189; 330 NW2d 834 (1982), nor MCR 6.302(C)(3)[12] explicitly provided the prosecution with the right to withdraw from a plea agreement when the judge declines to follow its terms.[13] The Court found, however, that such an option was implied in *Killebrew.*[14]

The Court engaged in a thorough analysis of *Killebrew,* observing that the opinion made substantive distinctions between sentence recommendations and sentence agreements.[15] The Court discussed *Killebrew* in conjunction with cases con-

[11] *Siebert,* n 6 *supra.*

[12] MCR 6.302(C)(3) provides:

If there is a plea agreement and its terms provide for the defendant's plea to be made in exchange for a specific sentence disposition or a prosecutorial sentence recommendation, the court may

(a) reject the agreement; or

(b) accept the agreement after having considered the presentence report, in which event it must sentence the defendant to the sentence agreed to or recommended by the prosecutor; or

(c) accept the agreement without having considered the presentence report; or

(d) take the plea agreement under advisement.

If the court accepts the agreement without having considered the presentence report or takes the plea agreement under advisement, it must explain to the defendant that the court is not bound to follow the sentence disposition or recommendation agreed to by the prosecutor, and that if the court chooses not to follow it, the defendant will be allowed to withdraw from the plea agreement.

[13] *Siebert,* n 6 *supra* at 408.

[14] *Id.*

[15] *Id.* at 408-412.

When there is a sentence recommendation, the court may accept a defendant's guilty plea, but refuse to be bound by the sentence recommendation, subject to the defendant's right to withdraw his plea. When there is a sentence agreement, however, the court may not accept the plea and impose a different sentence, but must either accept or reject the entire agreement. *Id.* at 410-411.

MCR 6.302(C)(3) was designed to incorporate and clarify the procedures set forth in *Killebrew* with the addition that the court could accept a plea agreement without having seen a presentence report.

cerning prosecutorial charging discretion, *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672; 194 NW2d 693 (1972) (*Genesee Prosecutor I*), and *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115; 215 NW2d 145 (1974) (*Genesee Prosecutor II*). The Court looked to contract principles, observing that a prosecutor has the right to obtain the benefit of his bargain with a defendant by receiving "a specific sentence and no less."[16]

The Court said that where the "prosecutor, in the exercise of the discretion of that office, agrees to a charge reduction if certain conditions are met, that agreement remains conditional until the terms of the agreement are fulfilled," and that

> [t]he court, in accepting a plea to a lesser offense, effectively dismisses the greater offense—a charge respecting which the prosecutor has not relinquished discretion.[17]

In ruling that the prosecutor should be given the opportunity to withdraw from a plea agreement if the sentence agreement is not followed, the Court decided that this would not infringe on the court's sentencing discretion, stating:

> We agree that a sentencing court has the exclusive authority to determine the appropriate sentence, in that neither a prosecutor nor a defendant can dictate the sentence, either separately or by agreement. Thus, a sentencing court has the right to reject a sentence agreement presented by a prosecutor and a defendant. In a sense, neither a prosecutor nor a defendant has a right to a specific sentence. It does not follow, however, that a defendant has a right to the benefit of a court's discretion to sentence leniently where the charge sen-

---

[16] *Siebert,* n 6 *supra* at 413.
[17] *Id.* at 415.

tenced upon is a reduced charge offered by a
prosecutor in exchange for a particular sentence.
In that circumstance, the judicial right to exercise
sentencing discretion must be balanced with the
charging rights of a prosecutor and the rights of a
defendant. A defendant's right to have a court
exercise sentencing discretion can be bargained
away in exchange for a reduced charge and a
specific sentence.[18]

The Court then addressed the contention that, in
light of the extensive cooperation, it would be
contrary to the Due Process Clause and fundamen-
tal fairness to permit the prosecutor to withdraw
and reinstate the original charges. The Court ob-
served that the defendants' decision to plead guilty
of a lesser offense and cooperate rested on the
promise of reduced charges and sentences. The
Court concluded that Siebert and Oatman should
be provided an opportunity to obtain specific per-
formance of the agreements and receive the
agreed-upon sentences before the prosecutor would
be permitted to withdraw.

A majority of the Court of Appeals panel in
*Jefferson* applied, but criticized, the *Siebert/
Oatman* panel's analysis:

> Absent the Court's decision in *Siebert,* however,
> we would be disinclined to agree with the prosecu-
> tion. To allow the prosecution to withdraw from a
> plea agreement entered into with full knowledge
> by the prosecutor that the sentencing function is
> for the judiciary violates concepts articulated in
> *Killebrew, supra,* and more recently in *People v
> Cobbs,* 443 Mich 276; 505 NW2d 208 (1993). Fur-
> ther, to do so in a fact situation such as this,
> where defendant has satisfied her part of the

---

18 *Id.* at 429.

I also agree with the *Siebert/Oatman* panel that trial of the
originally charged offense would not offend the Double Jeopardy
Clause. *Siebert,* n 6 *supra* at 417-426.

bargain by cooperating fully with the authorities at her own personal risk, is fundamentally unfair.[19]

The Court said that although allowing a prosecutor to withdraw from an unfulfilled sentence agreement may be seen as no different than allowing a defendant to do so, "such an argument ignores the reality of the power and crime-charging authority of the prosecutor in the criminal law process, as well as constitutional considerations unique to a defendant charged with a crime."[20]

IV

I agree with the Court of Appeals in *Siebert/Oatman* that the prosecutor generally should be permitted to withdraw from a plea agreement for a lesser charge if the court decides not to sentence according to a sentencing provision of the agreement.

A

In *Killebrew,* this Court announced procedures to be followed when a defendant and the prosecutor choose to engage in plea negotiations. Where there is a sentence agreement, the court must either accept or reject the plea as a complete package according to the options set forth in MCR 6.302(C)(3). This Court's decision in *Killebrew* was premised on the following concern:

A full understanding of the consequences of a plea is impossible where the defendant, believing that he has negotiated a specific length of sentence, tenders his guilty plea, only to find that he is bound by the act of self-conviction, but the trial

---

[19] *Jefferson,* n 6 *supra* at 609.
[20] *Id.*

judge is free to impose any sentence within the statutory range.[21]

This Court designed procedures limiting judicial participation to enable the judge to maintain his role as "neutral arbiter." The Court preserved the judge's sentencing discretion, explaining,

> If the judge feels that the agreement reached by the defendant and government attorney will serve the interests of justice, he may accept the agreement or recommendation. If, however, the judge, in an exercise of his discretion, finds that the bargain is not appropriate, he is free to reject the plea. Thus, the judge's sentencing discretion is unhampered.[22]

As the Court of Appeals observed in *Siebert/ Oatman,* this Court's decision in *Killebrew* should be examined in tandem with cases concerning the principle of prosecutorial charging discretion affirmed in this Court's decisions in *Genesee Prosecutor I* and *Genesee Prosecutor II.*

In *Killebrew,* the Court focused on the exercise of judicial sentencing discretion where it could operate to the detriment of a defendant who had justifiably relied on a plea agreement. The principles enunciated by the United States Supreme Court in *Santobello v New York,* 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971), become relevant because the defendant relinquishes constitutional rights by entering a plea of guilty.[23]

---

[21] *Killebrew,* text accompanying ns 11 and 12 at 209.

[22] *Id.* at 211.

[23] The United States Supreme Court in *Santobello* said:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary,

Concerns regarding the separation of powers between the court and the prosecutor arise when the prosecutor agrees to reduce a particular charge in exchange for a particular sentence. The exercise of the prosecutor's charging discretion, and the prosecutor's reliance on the agreed-upon sentence in exchange for the exercise of his discretion, support recognition of a right to withdraw if the sentence agreement is not followed.[24]

Where a court is presented with a sentence agreement as part of a guilty plea, the procedures to be followed are those set forth in *Killebrew* and in MCR 6.302(C)(3). The court retains discretion to accept or reject the plea agreement. If the court is of the opinion that it does not have sufficient information to make an informed decision regarding the sentence agreement, it has the option of deferring acceptance of the plea until receipt of the presentence report.[25]

Permitting the prosecutor to withdraw from a plea agreement that has been approved by the court, when the court refuses to abide by a sentence agreement included as part of the agreement, does no violence to the court's exercise of sentencing discretion.[26]

---

but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. [*Id.* at 262.]

[24] See 1A Gillespie, Michigan Criminal Law & Procedure (2d ed), § 327.50, pp 121-123, referenced in *People v Siebert,* n 6 *supra* at 413. This Court in *People v Cobbs,* text accompanying n 19 *supra* at 284, said that the prosecutor's charging authority is not implicated when the defendant pleads guilty or nolo contendere to the charged offense.

[25] United States district courts are required to defer acceptance of the plea until the court has had an opportunity to review the presentence report. See *United States v Kemper,* 908 F2d 33, 36 (CA 6, 1990).

[26] The court must exercise its statutorily mandated sentencing discretion when reviewing the sentence agreement. As stated in

B

While the *Siebert/Oatman* panel held that the prosecutor should be permitted to withdraw from the plea agreements, it also ruled that Siebert and Oatman should be provided an opportunity to obtain specific performance of the agreements. In *People v Reagan,* 395 Mich 306; 235 NW2d 581 (1975), this Court ordered the remedy of specific performance when the prosecutor breached a provision of an agreement with a defendant.[27] This Court said:

> Law enforcement processes are committed to civilized courses of action. When mistakes of significant proportion are made, it is better that the consequences be suffered than that civilized standards be sacrificed.[28]

In ordering specific performance, the Court relied in part on the reasoning of *Santobello* regarding the enforcement of plea agreements.[29] This Court said:

---

*Killebrew, supra* at 205, "If the judge divorces himself from the sentencing process completely, he has abdicated a statutory function." See also *People v Farrar,* 52 NY2d 302, 305-307; 437 NYS2d 961; 419 NE2d 864 (1981).

[27] In *Reagan,* the prosecutor promised to dismiss the charges if the defendant passed a polygraph examination. Defendant passed the examination and the prosecutor sought an order of nolle prosequi, which was approved by the court. Subsequently, the prosecutor reinstated the charges after learning that the polygraph results may have been unreliable. The defendant was then tried and convicted of the original charges.

[28] *Id.* at 319.

[29] In arguing for a broader use of specific performance to enforce plea agreements, commentators observed,

> Even if the state does not benefit from its failure to perform, it severely injures defendants' expectations about the criminal consequences facing them. In all these cases, defendants are purposely led to expect that their cases have been settled and that the charges will be resolved in a certain way. The severity of the psychological injury in the form of disappointed expecta-

While there is precedential reference to the concept of "consideration" for a bargain in the context of the administration of criminal justice, we feel that here the analogy to contract law is inappropriate. The standards of commerce do not govern, and should not govern, the administration of criminal justice.[30]

In the instant cases, neither the prosecutor nor the defendant breached a term of the plea agreement. It was the court that declined to perform according to the literal terms of the agreement.[31] The California Supreme Court observed, "Specific enforcement is appropriate when it will implement the reasonable expectations of the parties without binding the trial judge to a disposition that he or

---

tions is particularly great for criminal defendants because of the seriousness of the consequences and the nature of the resources and expertise arrayed against them. Allowing only the remedy of vacatur for such disappointment places defendants at the mercy of prosecutors who are free to repudiate their promises through negligence or even bad faith. In such circumstances, it seems strikingly cruel to allow the state to encourage false hopes and then destroy them at will. If these intuitions about fundamental fairness are correct, they would support a rule that protects a defendant's expectations by providing for specific performance of broken plea agreements. [Westen & Westin, *A constitutional law of remedies for broken plea bargains,* 66 Cal L R 471, 526 (1978).]

See 22 CJS, Criminal Law, § 374, p 444.

In *Mabry v Johnson,* 467 US 504, 510; 104 S Ct 2543; 81 L Ed 2d 437 (1984), the prosecutor revised his offer of twenty-one years to be served concurrently with other sentences to twenty-one years to be served consecutively when the defendant's lawyer telephoned to accept the concurrent sentence offer. The United States Supreme Court said that the defendant's "inability to enforce the prosecutors [original] offer is without constitutional significance" and "did not impair the voluntariness or intelligence of his guilty plea" pursuant to the revised consecutive sentence offer. The Court added (p 510, n 11) that *Santobello* did not hold that the "Constitution compels specific performance of a broken prosecutorial promise as the remedy for such a plea . . . ."

[30] *Id.* at 314.

[31] See 22 CJS, Criminal Law, § 374, p 444.

she considers unsuitable under all the circumstances."[32] If a sentencing court refuses to sentence according to an agreement between the prosecutor and the defendant, either or both parties may call for specific performance.[33]

If the defendant has provided extensive assistance to the prosecutor as part of the plea bargain, considerations of fairness require that, before the prosecutor is permitted to withdraw from the agreement, the defendant first be given the option of specific performance.[34] In *People v Farrar,* 52 NY2d 302; 437 NYS2d 961; 419 NE2d 864 (1981),[35] New York's highest court said that the prosecutor's application to withdraw from a plea agreement need not be granted in all cases, since "among other things, prejudice to a defendant following a plea may prevent restoration to *status quo ante* and render vacatur of the plea

---

[32] *People v Mancheno,* 32 Cal 3d 855, 861; 187 Cal Rptr 441; 654 P2d 211 (1982).

[33] *Id.,* quoting a statement to that effect in *People v Kaanehe,* 19 Cal 3d 1, 13; 136 Cal Rptr 409; 559 P2d 1028 (1977).

In *Innes v Dalsheim,* 864 F2d 974, 978 (CA 2, 1988), the United States Court of Appeals for the Second Circuit observed similarly,

Comparing a criminal defendant with a merchant in the marketplace is an inappropriate analogy that we have rejected. The law of commercial contracts plays only a limited role in resolving a plea dispute. New York law reflects this limited role by requiring the preparation of a presentence report before any plea agreement may be finalized. Plea agreements are more properly viewed as agreements between the state and the defendant; when the parties arrive at an agreement constitutionally and in conformity with state sentencing procedures, each party may insist on adherence to the bargain struck. [Citations omitted.]

[34] See 22 CJS, Criminal Law, § 374, p 444.

[35] In *Farrar,* the New York Court of Appeals held that, while the judge retains the right to exercise sentencing discretion despite a sentence agreement, the prosecutor has the right to withdraw consent to the plea if the sentence imposed is less than the sentence negotiated. *Id.* at 307-308.

inappropriate . . . ."[36] In *People v Danny G,* 61 NY2d 169; 473 NYS2d 131; 461 NE2d 268 (1984), New York's highest court ordered specific performance when the sentencing court refused to sentence a defendant according to a sentence agreement after he had cooperated as required by the agreement, and said,

> Essential to our determination that specific performance is warranted under some circumstances is our concern that a defendant who has performed services for the prosecutor, at risk to himself, be treated fairly [citation omitted]. Once the defendant has been placed in such a "no-return" position, relegating him to the remedy of vacatur of his plea cannot restore him to the *status quo ante,* and he should therefore receive the benefit of his bargain, absent compelling reasons requiring a different result.[37]

V

While I agree with the Court of Appeals in *Siebert/Oatman* that withdrawal or specific performance should ordinarily ensue when the court refuses to abide by a sentence agreement, I conclude on review of the records in the instant cases that fairness requires that the rule announced by the Court of Appeals in *Siebert/Oatman,* today affirmed by this Court, should be applied prospectively and that the reduced sentences imposed by the Recorder's Court should be affirmed.

As the Court of Appeals panels in *Siebert/ Oatman* and *Jefferson* observed, no procedure or

---

[36] *Id.* at 308.

[37] *Id.* at 175-176. See also *People v McConnell,* 49 NY2d 340, 348-349; 425 NYS2d 794; 402 NE2d 133 (1980), holding that the defendant was entitled to specific performance of a sentence agreement where he had testified against other defendants.

court rule specifically provides the prosecutor with the right to withdraw from a plea agreement under the circumstances of the instant cases.[38] While I agree there is such a right by implication, it was not resolved before the Court of Appeals decision in *Siebert* that the courts of this state would recognize such an implicit right.[39] Because recognition of the prosecutor's right to withdraw from a plea agreement when the court fails to mete out the agreed-upon sentence represents a departure from the practice in the jurisdiction where the plea agreements were entered into, this new rule should not be applied in the instant cases involving the court's statutory power to depart for substantial and compelling reasons.

The Recorder's Court judge in *Siebert/Oatman* stated during the presentence conference that the practice in his court was not to enforce sentence agreements. The judge said that he had inadvertently failed to inform the parties of his intention

[38] The *Jefferson* panel stated, '

> Before *Siebert*, neither case law, court rule, nor practice would allow the procedure now condoned, and, in fact, *People v Pool*, 183 Mich App 191; 454 NW2d 121 (1989), would have prohibited it. [*Jefferson*, n 6 *supra* at 609-610.]

In *Pool*, the prosecutor sought to obtain specific performance of a sentence agreement one month after the court had sentenced contrary to the agreement. *Pool* is distinguishable for the reasons stated by the *Siebert/Oatman* panel, namely, the prosecutor in *Pool* did not mention the agreement at the time of sentencing, did not object to the sentence, did not state his intention to rely on the agreement until after sentencing, and sought specific performance, rather than withdrawal. See *Siebert*, n 6· *supra* at 407. The result in *Pool* was premised, in part, on the lack of authority holding that "a sentence which does not follow the sentence agreement is invalid." *Pool, supra* at 192-193.

[39] See, e.g., *People v Dusa*, unpublished opinion per curiam of the Court of Appeals, issued June 30, 1992 (Docket No. 129993). Cf. MCR 6.310(C) permitting the prosecutor to move to vacate a plea only when the defendant has failed to comply with the terms of the plea agreement.

not to be bound by the sentence agreements when
he accepted Siebert's and Oatman's pleas.[40] In
*Jefferson,* the parties and the judge engaged in
extensive discussion regarding the discretion of the
court to depart from the sentence agreement.
While Jefferson's lawyer and the judge acknowl-
edged that the judge's sentencing discretion was
circumscribed, the text of the plea agreement
provided for the "Court's approval."[41] In the cir-
cumstances, I conclude that the reduced sentence
imposed on Siebert, Oatman, and Jefferson should
be affirmed.[42]

---

[40] I note again that the question whether there are substantial and
compelling reasons for departure was not presented on this appeal.

[41] Paragraph 4 of the sentence agreement states:

> After the Prosecutor's Office has satisfied itself with the
> truthfulness of the signed statement of Mary Jefferson in
> compliance with Paragraph 1 hereof, and is satisfied with her
> good faith compliance with all the terms of this agreement, the
> Prosecutor's Office agrees to dismiss the original charges
> against Mary Jefferson now pending in the Recorder's Court,
> Case No. 88-7165, and agree to a plea of guilty of Delivery of
> 225 grams or more, but less than 650 grams of a powder
> containing cocaine, contrary to MCL 333.7401(2)(a)(ii) [MSA
> 14.15(7401)(2)(a)(ii)]. Furthermore, the Prosecutor's Office agrees
> to have Mary Jefferson sentenced to a period of incarceration of
> Ten (10) to Thirty (30) years, *subject to the Court's approval.*
> [Emphasis added.]

Jefferson's lawyer argued at sentencing that the "Court's approval"
language in the sentence agreement introduced an element of ambi-
guity whether the sentence agreement prevented exercise of the
court's sentencing discretion on the basis of substantial and compel-
ling reasons to depart.

In *Siebert/Oatman,* the sentence agreements provided for imposi-
tion of the statutorily mandated minimum sentence, but did not
provide that the court could not depart from the mandatory sentence
for substantial and compelling reasons. (See n 5.)

On the basis of the foregoing, I agree with the observation in the
opinion signed by four justices of this Court in *Jefferson, ante,* p 514,
n 9, that greater specificity in plea/sentence agreements might be
helpful.

[42] The United States Court of Appeals for the Second Circuit said:

> The state's leverage in the plea bargaining process is nearly
> always superior to that of a defendant. Rather, this holding

VI

The decision of the Court of Appeals should be modified to reinstate the reduced sentences of five to thirty years in *Siebert*, three to thirty years in *Oatman*, and five to thirty years in *Jefferson*.

MALLETT, J. (*dissenting*). Justice LEVIN would hold that "when a prosecutor enters into a sentence agreement with a defendant, he may seek to withdraw from the agreement if the court departs below the agreed-upon sentence." *Ante* at 519. Thus, Justice LEVIN essentially would hold that a sentencing judge is without authority to deviate from a sentencing agreement entered into by the prosecution and a defendant who has pleaded guilty. We disagree.

Instead, we abide by MCL 333.7401(4); MSA 14.15(7401)(4) and would hold that the sentencing authority is within the exclusive purview of the judiciary. The judiciary is *always* allowed to depart from mandatory minimum sentences when there are substantial and compelling reasons.

The trial judge has exclusive authority with respect to sentencing. *People v Cobbs,* 443 Mich 276, 281; 505 NW2d 208 (1993); *People v Milbourn,* 435 Mich 630, 651; 461 NW2d 1 (1990); *People v Killebrew,* 416 Mich 189, 207; 330 NW2d 834 (1982). The Legislature has specifically conferred discretion upon trial judges when sentencing defendants.[1]

[that the defendant was not clearly informed of the consequences of his breach of the plea agreement] should encourage greater clarity and specificity in plea negotiations and plea agreements. In that way, it will tend to ensure fairness, stabilize and finalize the parties' expectations, and reduce the waste of judicial resources required to review challenges to guilty pleas that are encouraged when the record of the plea proceedings is ambiguous. [*Innes,* n 33 *supra* at 980.]

[1] See Const 1963, art 4, § 45, that delegates indeterminate sentencing authority to the Legislature.

A judge of a court having jurisdiction is authorized and empowered to pronounce judgment against and pass sentence upon a person convicted of an offense in that court. [MCL 769.1(1); MSA 28.1072(1).]

The Legislature has further empowered trial court judges with the ability to deviate from mandatory minimum sentences when confronted by substantial and compelling reasons.

The court may depart from the minimum term of imprisonment authorized under subsection (2)(a)(ii), (iii), or (iv) if the court finds on the record that there are substantial and compelling reasons to do so. [MCL 333.7401(4); MSA 14.15(7401)(4).]

See also *People v Fields*, 448 Mich 58; 528 NW2d 176 (1995).

Even where there is a sentence agreement, the trial court is required to exercise discretion when imposing a sentence. *People v Killebrew, supra; People v Pool*, 183 Mich App 191, 193; 454 NW2d 121 (1989). "[T]he judge may not abdicate this function by allowing sentence agreements to control the sentencing process." *People v Cobbs, supra* at 281. In addition, this Court has specifically stated that the prosecution cannot dictate a sentence through agreements or recommendations.

If the judge divorces himself from the sentencing process completely, he has abdicated a statutory function. The prosecuting attorney through negotiated sentence "agreements" and recommendations then becomes the sentencing authority contrary to statute. [*People v Killebrew, supra* at 205.]

It is certain that the trial court has exclusive discretion when sentencing a defendant and only

the Legislature may circumscribe a trial judge's sentencing authority. Thus, it is wrong to suggest that a trial judge invades the prosecutor's charging authority when he imposes a lesser sentence because the defendants fully cooperated with law enforcement officials.

In these cases, the prosecution agreed that in exchange for cooperation with law enforcement officials the defendants would be charged with a lesser crime. Further, in all three of these cases, the defendants' cooperation was exemplary. The prosecution received that for which it bargained. The prosecution had full cooperation that allowed the prosecution to inform the judge that a sentencing agreement had been reached. As this Court indicated in *People v Fields, supra* at 77, cooperation with law enforcement officials can provide a substantial and compelling basis for deviation from the imposition of a mandatory sentence. Thus, in these cases, where the defendants fully cooperated, the trial judge was empowered to impose lesser sentences on each defendant.

Because no agreement entered into by a defendant and the prosecution can diminish the judiciary's sentencing authority, the sentences imposed by the trial courts should have been affirmed by the Court of Appeals. Sentencing authority is under the exclusive purview of the judiciary and only the Legislature through a properly enacted statute can diminish that authority.

If the prosecution wanted to debate the sentences imposed by the trial judge, its sole remedy should have been to appeal on the ground that the trial court deviated from the mandatory minimum sentences without substantial and compelling reasons. *Fields, supra.* This the prosecution did not

do, and thus, we would uphold the sentences imposed by the trial judges.

CAVANAGH, J., concurred with MALLETT, J.