**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 30, 2001**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                      No. 116710

ABRAHAM SAFFOLD,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

The question presented is whether the trial court's failure to comply with MCR 6.302(B)(3)(c) in accepting defendant's guilty plea to one count of receiving and concealing stolen property and fourth felony offender demands reversal of defendant's conviction. This undertaking is one where we, as our predecessor courts have done for over a

quarter century, are interpreting and applying our own rules concerning guilty pleas. MCR 6.302(B)(3)(c) requires the trial court to inform the defendant that he waived his right at trial to be presumed innocent until proven guilty. Here, the trial court did not inform defendant of the presumption of innocence during the guilty plea hearing. However, earlier in the day defendant was present while the same judge instructed the jury that convened for defendant's trial—on the charge to which he subsequently pleaded guilty—that the defendant was presumed innocent until proven guilty beyond a reasonable doubt. In light of the *Guilty Plea Cases*, 395 Mich 96; 235 NW2d 132 (1975), the question is whether there was *substantial*, not strict, compliance with the requirements of MCR 6.302.

Despite the trial court's omission of the presumption of innocence during the plea hearing, we hold that defendant "was informed of such constitutional rights and incidents of a trial as reasonable to warrant the conclusion that he understood what a trial is and that by pleading guilty he was knowingly and voluntarily giving up his right to a trial and such rights and incidents." *Guilty Plea Cases*, supra, p 122. We reverse the Court of Appeals decision and reinstate defendant's plea of guilty.

2

I

Jury selection for defendant's trial[1] began on the morning of April 13, 1998. In the afternoon of the first day of trial, after the first witness testified, the defendant decided to accept the prosecutor's plea bargain offer. Pursuant to that offer defendant pleaded guilty to one count of receiving and concealing stolen property, MCL 750. 535, and to being a fourth felony offender, MCL 769.12. The trial judge engaged in a lengthy hearing with defendant on his guilty plea.[2] However, during that hearing the trial judge did not inform defendant that by pleading guilty he was giving up the right to be presumed innocent until proven guilty.[3] On July 17, 1998, defendant was sentenced as an habitual offender, fourth offense, to a prison term of twelve to forty years.

On December 14, 1998, defendant moved to withdraw his plea on the ground that the trial court failed to inform him

---

[1]Defendant was charged with five counts: 1) home invasion, second degree, MCL 750.110a(3), 2) home invasion, second degree, MCL 750.110a(3), 3) receiving and concealing weapons or firearms, MCL 750.535b, 4) receiving and concealing stolen property in excess of $100, MCL 750. 535, and 5) receiving and concealing stolen property in excess of $100, MCL 750. 535.

[2]The transcript for the hearing totals thirty-one pages.

[3] MCR 6.302(B)(3)(c).

of the presumption of innocence. After a hearing on January 25, 1999, the trial court denied the motion. On March 28, 2000, the Court of Appeals issued a memorandum opinion[4] reversing the trial court's denial of defendant's motion to withdraw his guilty plea. The prosecution appealed to this Court, and we granted leave to appeal. 463 Mich 906 (2000).[5]

II

The procedures governing the acceptance of a guilty plea were first adopted by this Court in 1973[6] and are currently set forth in MCR 6.302. MCR 6.302(A) provides that

> [t]he court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court must place the defendant under oath and personally carry out subrules (B)—(E).

In *People v Shekoski*, 393 Mich 134; 224 NW2d 656 (1974), this Court had held that "strict adherence to those requirements[7] is mandatory and that neither substantial compliance nor the

---

[4]Unpublished memorandum opinion, issued March 28, 2000 (Docket No. 217802).

[5] In granting leave, we directed the parties to "include discussion of whether the alleged error is subject to harmless error review and, if so, what is the appropriate harmless error standard in this case." Because we hold that the trial court substantially complied with the requirements for taking a plea, we do not reach the question of harmless error.

[6]389 Mich lv-lvii

[7]At that time, the requirements, which were substantially similar to those of MCR 6.302, were found in GCR 1963, 785.7.

4

absence of prejudicial error will be deemed sufficient." However, one year later in *Guilty Plea Cases, supra,* this Court renounced the *Shekoski* holding that "any failure of strict adherence to the procedure and practice specified in Rule 785.7 [now MCR 6.302] mandates reversal." *Guilty Plea Cases*, *supra*, p 113. Instead, the Court adopted a doctrine of substantial compliance, holding that "[w]hether a particular departure from Rule 785.7 justifies or requires reversal or remand for additional proceedings will depend on the nature of the noncompliance." *Guilty Plea Cases, supra* at 113. Thus, the question on appeal is whether it appears on the record that the defendant was informed of such constitutional rights and incidents of a trial as is reasonable to warrant the conclusion that he understood what a trial is and that by pleading guilty he was knowingly and voluntarily giving up his right to a trial and such rights and incidents. *Id*. at 113, 122.

To determine if there was substantial compliance with the court rule, the first question is whether the right omitted or misstated is a "*Jaworski* right." In *People v Jaworski*, 387 Mich 21; 194 NW2d 868 (1972), this Court held that a plea of guilty must be set aside where the record of the plea proceedings shows that the defendant was not advised of all three constitutional rights involved in a waiver of a guilty

5

plea: 1) the right to trial by jury, 2) the right to confront one's accusers, and 3) the privilege against self-incrimination, relying on *Boykin v Alabama*, 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969). If a *Jaworski* right is omitted from the plea proceedings, then reversal is mandated. However, the omission from the plea proceedings of one or another of the rights attendant to a trial, other than a *Jaworski* right, or the imprecise recital of any such right, including a *Jaworski* right, does not necessarily require reversal. *Guilty Plea Cases, supra,* p 122.

Here, the trial court failed to inform the defendant of the presumption of innocence. Informing defendant of his right to be presumed innocent is required under MCR 6.302(B)(3)(c)[8], but is not one of the three *Jaworski* rights. We note that in some cases the Court of Appeals has stated or assumed that the presumption of innocence had the same status as the three *Jaworski* rights—that its omission mandates an automatic reversal. See *People v Russell,* 73 Mich App 628, 629-630; 252 NW2d 533 (1977), and *People v Bender,* 124 Mich App 571; 335 NW2d 85 (1983). In other cases, this Court and the Court of Appeals have reversed a guilty plea, without

---

[8]MCR 6.302(B)(3)(c) requires the court to advise the defendant and determine that the defendant understands that if his plea is accepted the defendant will not have a trial and gives up the rights he would have had at trial, including the right "to be presumed innocent until proven guilty."

6

engaging in further analysis, when the trial court omitted the presumption of innocence. See *People v Lawrence*, 413 Mich 866; 317 NW2d 856 (1982)[9], *People v Mitchell,* 125 Mich App 475; 336 NW2d 31 (1983), and *People v Heintzelman,* 142 Mich App 94; 368 NW2d 903 (1985).[10] To the extent that these cases

---

[9] The order in *Lawrence*, read, in its entirety:

> On order of the Court, the defendant having filed a request for review of his conviction, this Court having issued an order to show cause why the defendant's conviction should not be reversed because he was not advised of the presumption of innocence as required by GCR 1963, 785.7(1)(g)(iii), and the prosecutor's response to that order having been considered by the Court, now, therefore, it is ordered that the request for review be treated as an application for leave to appeal and, pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, we reverse the defendant's convictions because he was not advised of the presumption of innocence. GCR 1963, 785.7(1)(g)(iii); *Guilty Plea Cases,* 395 Mich 96, 125; 235 NW2d 132 (1975). We remand the cases to the Washtenaw Circuit Court for further proceedings.

[10] The dissent relies on the above-cited cases to assert that this Court has established a precedent that where a defendant is not informed of his right to be presumed innocent, his conviction must be set aside, and that the Court of Appeals has "followed this established precedent." Slip op at 8. We would note that in *Russell, supra,* the Court of Appeals *affirmed* the defendant's conviction despite the trial court's failure to "[speak] the precise words 'presumed innocent'." 73 Mich App 631. In *People v Jackson,* 71 Mich App 468; 248 NW2d 551 (1976), the Court of Appeals affirmed the defendant's conviction where, although he was not informed of his right to be presumed innocent at the guilty plea proceeding, he was informed of that right in a *prior* guilty plea entered the *preceding day* before the same judge. *Id.* at 469-470.

(continued...)

7

We futher note that the decision of the Court of Appeals in *People v Ingram,* 166 Mich App 433; 424 NW2d 19 (1988), did not involve a failure to advise, but rather an imprecise recital of the right to be presumed innocent. The trial court stated that the defendant would be "presumed innocent of this offense until proved guilty beyond a reasonable doubt." The Court of Appeals affirmed the defendant's guilty plea, finding that "[i]t appears on the record that defendant was sufficiently informed of his constitutional rights and the incidents of trial to warrant a conclusion that he understood what a trial is and that by tendering his plea he was knowingly and intelligently giving up his right to a trial and its consequent rights and protections." *Id.* at 437-438.

In *Heintzelman, supra, Mitchell, supra,* and *People v Wilson,* 78 Mich App 307; 259 NW2d 356 (1977), the Court of Appeals reversed the defendants' convictions where there was a *total absence* of advice concerning the presumption of innocence.

Finally, in *Bender, supra,* the defendant pleaded guilty to an habitual offender charge after being tried and found guilty by a jury on the accompanying substantive offenses. The Court of Appeals observed that defendant was informed of a number of his rights through the statement of those rights by his counsel when the defendant expressed a desire to plead guilty to the habitual charge *while the jury was still deliberating on the substantive charges*. The Court of Appeals stated: "Although defendant was not personally advised of a number of his rights by the trial court, defense counsel's on-the-record statement of some of defendant's rights satisfies the requirement that the trial court 'personally address' the defendant as to those rights. . . . As long as defendant is orally informed in open court of his rights and the trial court can personally observe defendant's demeanor and responses, the purpose of the personally address requirement is achieved. . . . Nor is it fatal to the plea that defendant was informed of his rights before the jury returned a guilty verdict on the principal charge." *Id.* at 577 (citations omitted). Thus, the decision of the Court of Appeals in *Bender* supports this Court's analysis in the present case in determining that the recital of a right in open court at a time other than the actual plea proceeding is sufficient to

(continued...)

8

held that the omission of the presumption of innocence from a guilty plea proceedings requires an automatic reversal of the guilty plea, we disapprove of them.[11]

In *Guilty Plea Cases*, we did recognize that the presumption of innocence is "at the core of our criminal process and fundamental to defendant's understanding of a trial." *Id*. at 125. Nevertheless, the omission from a plea proceeding of a right attendant to trial, other than a *Jaworski* right, does not necessarily require reversal. *Id*. at 122. If from the record it appears that the defendant has

---

[10](...continued)
satisfy the "personally address" requirement; the Court vacated the guilty plea only because there was a *total absence* of advice concerning the presumption of innocence. We note, of course, that under current practice, a defendant does not plead guilty to an habitual supplementation.

Therefore, while we agree with the dissent's view that "[t]his line of precedent firmly establishes [that a complete failure] to advise [a] defendant of his right to be presumed innocent" will continue to result in reversal of a defendant's guilty plea, we conclude that the above precedent does not stand for the ultimate proposition urged by the dissent: that advise concerning the presumption of innocence delivered at an in-court proceeding close in time to the guilty plea proceeding is insufficient compliance with the court rule. In our view, the above precedent fully supports our conclusion in this case that the advice imparted earlier in the case by the trial court was sufficient compliance with MCR 6.302(B).

[11]We continue to emphasize the point we made in *People v Williams*, 386 Mich 277; 192 NW2d 466 (1971), and *Jaworski*, supra, that it is important for the trial court to make a full and complete record of protecting all the defendant's rights. Although the trial court's plea hearing with defendant in this case was otherwise exemplary, the inadvertent omission of one sentence gave rise to three years of appellate review.

9

been informed of his right to a trial and that this right is being waived by his plea of guilty, reversal is not required by the omission of any of the rights enumerated in the Court rule, even the presumption of innocence. *Id.*

Here, defendant was not informed of the presumption of innocence during the plea hearing. However earlier in the day, while defendant was present, the same judge had given the defendant's jury, which was empaneled on the same charge to which defendant pleaded guilty, a thorough explanation of the presumption of innocence,[12] stating:

> A person accused of a crime is presumed to be innocent. This means that you must start with the presumption that the defendant is innocent. This presumption continues throughout the trial, and entitles the defendant to a verdict of not guilty unless you find from the evidence beyond a reasonable doubt that he is.
>
> Every crime is made up of parts called elements. The prosecutor must prove each element of the crime beyond a reasonable doubt.
>
> The defendant is not required to prove his innocence or to do anything.

---

[12] Although we reversed in the *Howell* case for failure to impart the presumption of innocence information, *Guilty Plea Cases, supra* at 125, nothing in the opinion suggests that such information was supplied by the judge, or any other participant, at *another stage* of the proceedings. In other words, *Howell* represents a *complete failure* to impart the presumption of innocence information—not an "alternative" impartation of the information as in this case. The same is true of our summary order in *People v Lawrence,* 413 Mich 866 (1982).

Should you find that the prosecutor has not proven every element beyond a reasonable doubt, then you must find the defendant not guilty.

A reasonable doubt is defined as a fair, honest doubt growing out of the lack of evidence or the evidence in the case. It is, however, not an imaginary or a possible doubt. Instead, it is a doubt based upon reason, and common sense. It is a doubt which is considered reasonable after a careful and considered examination of all the facts and circumstances in the case.

Before defendant pleaded guilty, his trial on the charge to which he pleaded guilty had begun. Defendant had participated in having his constitutional rights to a trial by jury implemented, and specifically had witnessed the jury being informed of the presumption of innocence to which he was entitled.

In *Guilty Plea Cases, supra* at 114-115, we approved cases where the trial judge did not personally address the defendant by informing him of the maximum sentence (*Courtney*) or the charge that the defendant was facing (*Bauer*). We concluded that the *prosecutor's* statement of that information in the presence of the defendants was sufficient. We stated:

These departures do not justify reversal. While it would be better for the judge to cover all the points himself, as long as he assumes the principal burden of imparting the required information, as did the judges in *Courtney* and *Bauer*, the purpose of requiring him personally to address the defendant and in so doing observe his demeanor and responses is achieved.

A guilty plea conviction will not be reversed if the judge engages in the required colloquy but

11

fails to mention an item which the record shows was established through, for example, an opening statement of or interjection by the prosecutor or defense counsel *in the hearing of the judge and defendant*. It is proper for the prosecutor or the clerk to read the information in the judge's presence. [Emphasis supplied.]

Here, the trial judge addressed defendant with respect to every right contained in the court rules save one. That failure was rectified by the *judge's* earlier statement, in defendant's presence, that informed the jury—and *defendant*-at length concerning the presumption of innocence. Thus, the judge clearly assumed "the principal burden of imparting the required information," *id.* at 114.

In *Courtney* and *Bauer*, this Court approved the practice of some of the required information being imparted by the *prosecutor*—or, indeed, as we stated later, by "an opening statement of or interjection by the prosecutor or defense counsel in the hearing of the judge and defendant." *Id.* at 114-115. In such situations the reviewing court will rely on the defendant's *presence* when the information regarding the presumption of innocence is imparted to conclude that the defendant is aware of that information and that, therefore, his plea is knowing and *understanding*.[13] The clear import of

_____

[13]As indicated by the court rules themselves, and also by this Court's discussion in *Guilty Plea Cases, supra* at 126-128, the *voluntariness* of a defendant's guilty plea is determined by his awareness of whether there have been any
(continued...)

12

our statements in *Guilty Plea Cases* is that observing the demeanor and responses of the defendant when advice regarding the "bulk" of the rights is imparted is sufficient to establish compliance with the "personally address" requirement.[14]

In contrast to the situations already approved by us in the *Courtney* and *Bauer* cases, in this case it was the *judge* who imparted the additional information. Thus, we conclude that "the purpose of requiring [the judge] to personally address the defendant and in so doing observe his demeanor and responses [has been] achieved." *Id.* at 114.

### III

Apparently the dissent agrees with us on the legal principles involved. Both opinions recognize that the defendant's plea must constitute a knowing and intelligent waiver of the defendant's rights. We also agree that reversal of defendant's conviction is not required if there is

---

[13](...continued)
plea or sentence agreements, whether he has been threatened or otherwise coerced into pleading guilty, and whether it is his own choice to plead guilty, MCR 6.302(C), not by whether he has received the information concerning his trial rights.

[14]There is nothing in the *Guilty Plea Cases* opinion from which we could conclude that the trial judges in *Courtney* and *Bauer* were observing the defendants' demeanors when the prosecutors imparted the "missing" information, and, of course, the defendants would not have made any response to statements by the prosecutors.

substantial compliance with the court rule.

The point of difference between the majority and the dissent is in the dissent's application of the concept of "substantial compliance". The majority abides by the interpretation of our rules set forth in *Guilty Plea Cases* that has held sway for over twenty-five years: there is substantial compliance with the "personally address" requirement if, even though the judge fails to recite a specific right at the guilty plea proceeding, the omission is rectified by recitation of the right in the defendant's presence at some other point during the in-court proceedings. The dissent apparently would require strict compliance with MCR 6.302(B)(3)(c), and mandate reversal whenever the defendant was not instructed on the presumption of innocence at the guilty plea hearing itself. In so doing, the dissent would sub silentio overrule *Guilty Plea Cases,* and return to the strict compliance rule of *People v Shekoski.* We believe that the crucial question is whether the defendant's plea was knowing and voluntary, not whether the trial court has engaged in a letter-perfect "talismanic chant."[15] Under the court rule, a failure to state one of the rights at the plea hearing does not require vacating the conviction where, as

---

[15]People v Willsie, 96 Mich App 350, 353; 292 NW2d 145 (1980).

here, the court has directly addressed the defendant regarding the enumerated rights generally and the defendant has otherwise been informed adequately of the omitted right. The dissent has not identified any basis in the rule to support its contrary position. Thus, we decline the dissent's invitation to turn our backs on established precedent and re-interpret "substantial compliance" to require strict compliance at the time of the plea-taking.

Finally, the dissent suggests that the presumption of innocence has the same status as the three *Jaworski* rights—that its omission mandates an automatic reversal. In *Jaworski* this Court held that in order for there to be a valid guilty plea, there must be an enumeration and a waiver on the record of the three federal constitutional rights as set forth in *Boykin v Alabama, supra*: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. The United States Supreme Court has not held that the presumption of innocence is such a right. See *Johnson v Ohio*, 419 US 924, 925; 95 S Ct 200; 42 L Ed 2d 158 (1974). Although we continue to recognize the importance of the presumption of innocence, we decline to elevate it to the status of the *Boykin/Jaworski* rights.

IV

On the basis of the whole record, including the beginning

15

of the jury trial earlier that same day, we find that the trial judge's initial determination that the defendant knowingly and voluntarily gave up his right to a trial and all the attendant rights was correct.

We reverse the judgment of the Court of Appeals vacating defendant's guilty plea, and reinstate defendant's conviction and sentence.

CORRIGAN, C.J., and TAYLOR and YOUNG, JJ., concurred with WEAVER, J.

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF THE MICHIGAN,

    Plaintiff-Appellant,

v                              No. 116710

ABRAHAM SAFFOLD,

    Defendant-Appellee.

_____

YOUNG, J. (*concurring*).

I join in the majority opinion and fully concur that an omission *from the plea proceedings* of one or another of the rights attendant to trial, other than a *Jaworski* right, does not necessarily require reversal. However, I write separately because I wish to clarify that, in my view, there was no omission of the "presumption of innocence," and thus, no error under MCR 6.302(B)(3)(c) occurred in this case.

The trial court, during the plea proceeding, advised defendant that he had a right to a trial by jury and that he had a right to have his guilt proven beyond a reasonable doubt. Specifically, the trial judge directly said the following to defendant:

> *The Court*: You obviously know what a jury trial is. You've been sitting here during jury

selection, and you've seen witnesses testify so you understand that you're here because you have the right to be here. Meaning you have the right to have this trial, and *you have the right to have the jury decide the facts, and decide whether or not your guilt is proven beyond a reasonable doubt.* And you've seen cross-examination so you understand you have the right to see, hear and cross-examine the State's witnesses. Am I correct in inferring that? [Emphasis added].

\* \* \*

*The Court*: Do you understand that you give up those rights, and give up the right to a trial if you change your plea to guilty?

In my view, advising defendant that he had a right to have his guilt proven beyond a reasonable doubt necessarily encompassed the advice that he would have been presumed innocent. The presumption of innocence is "nothing more than an amplification of the prosecution's burden of persuasion." See 2 McCormick, Evidence (5th ed), § 342, p 437. If the presumption of innocence adds anything, it is merely "a warning not to treat certain things improperly as evidence." 9 Wigmore, Evidence (3d ed), § 2511, p 409.

The court did not recite literally the court rule terminology. However, when defendant was told that he had a right to have his guilt proven beyond a reasonable doubt, he necessarily learned that he would be considered innocent in the absence of such proof of his guilt. In my view, this advice adequately informed defendant of the "presumption of innocence." No single method of recital is required. *Guilty*

2

*Plea Cases*, 395 Mich 96, 119-120; 235 NW2d 132 (1975).

I believe that the phrase "presumption of innocence" is merely a shorthand way of referring to the right to have a jury find a defendant guilty beyond a reasonable doubt. Accordingly, I believe defendant was in fact informed of the "presumption of innocence" and that no omission of advice as required by the rule occurred in this case.

CORRIGAN, C.J., concurred with YOUNG, J.

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                                   No. 116710

ABRAHAM SAFFOLD,

    Defendant-Appellee.

_____

MARKMAN, J. (*dissenting*).

I respectfully dissent. The issue before this Court is whether the trial court's failure to comply with MCR 6.302 in accepting defendant's guilty plea (to a charge of receiving and concealing stolen property) requires the reversal of his conviction.[1] Contrary to the requirement of MCR 6.302, the

---

[1] MCR 6.302, in pertinent part, provides:
    (A) Plea Requirements. The court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court *must* place the defendant under oath *and* personally carry out subrules (B)-(E).

    (B) An Understanding Plea. *Speaking directly to the defendant,* the court *must* advise the defendant and determine that the defendant understands:

(continued...)

trial court failed to inform the defendant, at his guilty plea hearing, of his right to be presumed innocent. The trial court denied defendant's motion to withdraw his guilty plea on this ground. The Court of Appeals subsequently reversed, asserting that the rule required the trial court "to directly advise a defendant of the presumption of innocence on the record before accepting a guilty plea." Unpublished memorandum opinion, issued March 28, 2000 (Docket No. 217802), at 2.

## I. PURPOSE AND GOAL OF GUILTY PLEA HEARING

The primary purpose of MCR 6.302's mandate that the defendant be personally addressed with the required statements is grounded in the principle that the defendant's plea must constitute a "knowing and intelligent" waiver of his constitutional rights. *McCarthy v United States*, 394 US 459, 465; 89 S Ct 1166; 22 L Ed 2d 418 (1969). To that end, the rule: (1) provides the court accepting the guilty plea the opportunity to observe the defendant's demeanor and the manner

---

¹(...continued)

\* \* \*

(3) if the plea is accepted, the defendant will not have a trial of any kind, and so gives up the rights the defendant would have at a trial, including the right:

\* \* \*

(c) to be presumed innocent until proved guilty . . . . [Emphasis added.]

2

in which he responds to the court's statements and questions; (2) impresses upon the defendant the full gravity and import of his plea, and that, in so pleading, he waives the right to a trial and all of his other related constitutional rights;[2] and (3) creates a record of factors relevant to ascertaining the voluntariness of defendant's plea.[3] *People v Napier*, 69 Mich App 46, 48; 244 NW2d 359 (1976), see also *Guilty Plea Cases*, 395 Mich 96, 122; 235 NW2d 132 (1975).

## II. PRESUMPTION OF INNOCENCE

The principle of the presumption of innocence is an essential foundation of our adversarial system of criminal justice. *In re Winship*, 397 US 358, 363; 90 S Ct 1068; 25 L

---

[2] *McCarthy*, *supra* at 465. See also *McMann v Richardson*, 397 US 759, 774; 90 S Ct 1441; 25 L Ed 2d 763 (1970); *North Carolina v Alford*, 400 US 25, 31; 91 S Ct 160; 27 L Ed 2d 162 (1970) (stating that a voluntary plea is one made with knowledge of fundamental constitutional rights and an understanding of the nature of the crimes charged); *People v Siebert*, 450 Mich 500, 511-515; 537 NW2d 891 (1995); *People v Thew*, 201 Mich App 78, 95; 506 NW2d 547 (1993), citing *Brady v United States*, 397 US 742, 747-748; 90 S Ct 1463; 25 L Ed 2d 747 (1970) (stating that "a guilty plea is the most serious step a defendant can take in a criminal prosecution [and] [f]or that reason, the plea 'not only must be voluntary but must be [a] knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances and likely consequences.'").

[3] An equally important, albeit more pragmatic, reason for requiring an on-the-record recitation of defendant's rights is to avoid, or at least discourage, numerous and sometimes frivolous post conviction attacks on the constitutional validity of the plea. See Orfield, *Pleas in federal criminal procedure*, 35 Notre Dame Lawyer 1, 31-32 (1959); Hoffman, *What next in federal criminal rules?* 21 Wash & Lee L R 1, 8 (1964).

Ed 2d 368 (1970), see also *Coffin v United States*, 156 US 432, 453; 15 S Ct 394; 39 L Ed 481 (1895).  The presumption of innocence is "the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."  *Coffin*, *supra* at 453.[4]  "The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction."  *Id.*

A guilty plea constitutes a waiver of the fundamental right to a jury trial.  *Parke v Raley*, 506 US 20, 29; 113 S Ct 517; 121 L Ed 2d 391 (1992).  It is because of the waiver of

---

[4] "One of the rightful boasts of Western civilization is that the (prosecution) has the burden of establishing guilt solely on the basis of evidence produced in court and under circumstances assuring an accused all the safeguards of a fair procedure.  *Irvin v Dowd*, 366 US 717, 729; 81 S Ct 1639; 6 L Ed 2d 751 (1961) (Frankfurter, J., *concurring*).  One of these safeguards is the presumption of innocence.  See also Abraham, The Judicial Process (7th ed), pp 104-105, stating:

> It is a cornerstone of Anglo-Saxon justice that an accused is presumed innocent unless and until proved guilty beyond a reasonable doubt.  Few, if any, concepts are more deeply rooted in our traditions. . . .  The layperson may quite naturally be quick to adjudge an accused guilty in his or her own mind and be sometimes joined by the press, particularly in America, but the Anglo-Saxon legal profession on both sides of the Atlantic Ocean, and throughout the English-speaking world, has done its best to adhere to the time-honored principle that an accused person is presumed to be innocent until proved otherwise beyond a reasonable doubt by due process of law.

4

these rights and because a guilty plea is itself effectively a self-imposed conviction, that the process "demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v Alabama*, 395 US 238, 243-244; 89 S Ct 1709; 23 L Ed 2d 274 (1969).  It is with this principle in mind that a court must review a guilty plea and determine whether the accused has been informed of all the rights that he is waiving.

### III.  MCR 6.302

MCR 6.302 states that the defendant is entitled during the guilty plea hearing to a *direct* and *explicit* statement from the court concerning the rights set forth in the rule. It is expressly required that the court "speak[] directly to" the defendant, and that the court "must advise" the defendant and "determine that the defendant understands" that he has the right to be presumed innocent until proved guilty.  MCR 6.302.

Clearly, the omission in this case was more than merely an imprecise recital of the rights to which defendant was entitled and which he was surrendering by virtue of his plea. See *People v Russell*, 73 Mich App 628, 631; 252 NW2d 533 (1977), asserting that "[t]he determinative question . . . is whether the trial judge omitted advice on that subject or merely gave an imprecise recital."  The flaw in procedure in

5

the instant case was not that the wrong formulation or the wrong articulation of defendant's rights was provided, but rather that *no* formulation and *no* articulation were provided. As the majority recognizes, I agree that substantial compliance with MCR 6.302, with regard to the right to be presumed innocent, is all that is required. However, the question in the instant case is whether there was *any* compliance with the rule. I can only answer this in the negative because the statement required by the rule was not made, precisely or imprecisely, perfectly or imperfectly, at the guilty plea hearing.

#### IV. ANALYSIS OF THE MAJORITY OPINION

The majority cites the *Guilty Plea Cases*, 395 Mich 96, 113; 235 NW2d 132 (1975), and states that "[w]hether a particular departure from [the rule] justifies or requires reversal or remand for additional proceedings will depend on the nature of the noncompliance." Slip op at 5. The majority then asserts that the inquiry on appeal "is whether it appears on the record that the defendant was informed of such constitutional rights and incidents of a trial as is reasonable to warrant the conclusion that he understood what a trial is and that by pleading guilty he was knowingly and voluntarily giving up his right to a trial and such rights and incidents." *Id.*, citing *Guilty Plea Cases*, *supra* at 122. The actual rule itself appears to be little more than a bit actor

**6**

in this process.

While it is true that the *Guilty Plea Cases* established that the determination whether MCR 6.302 was "substantially complied with" was to be part of a case-by-case inquiry, this Court also made clear at the time that the rule requires that a defendant be advised of his right to be presumed innocent, because such right is "at the core of our criminal process and fundamental to defendant's understanding of a trial." *Id*. at 125. In *Guilty Plea Cases*, this Court reversed a conviction entered on a plea of guilty where the trial court had failed to inform the defendant, during the guilty plea hearing, of his right to be presumed innocent. *Id*.

Further, this Court has had subsequent occasion to address whether a defendant must be advised of this right, and has concluded that a trial court's failure to advise the defendant, at the guilty plea hearing, that he has the right to be presumed innocent is error requiring reversal of the conviction. In *People v Allen*, 396 Mich 829 (1976), the defendant was not advised of the presumption of innocence, and, as a result, had his conviction set aside. In *People v Lawrence*, 413 Mich 866 (1982), there was an omission of any statement to the defendant that he had the right to be presumed innocent and, as a result, his conviction was reversed.

The Court of Appeals has also followed this established

7

precedent. In *People v Ingram*, 166 Mich App 433, 437-438; 424 NW2d 19 (1988), the Court of Appeals held that a defendant must be advised at the guilty plea hearing, however imprecisely, that he is relinquishing his right to be presumed innocent. In *People v Heintzelman*, 142 Mich App 94, 95; 368 NW2d 903 (1985), the defendant's conviction was reversed where the trial court had failed to advise him of his right to be presumed innocent. In *People v Mitchell*, 125 Mich App 475, 477; 336 NW2d 31 (1983), the Court of Appeals reversed the defendant's conviction where the trial court did not advise him of his right to be presumed innocent until proved guilty. In *People v Bender*, 124 Mich App 571, 578; 335 NW2d 85 (1983), the Court of Appeals held that "[t]he right to be presumed innocent is of preeminent importance and, therefore, a defendant must be informed of this right on the record or his plea is constitutionally defective." The Court proceeded to reverse the defendant's conviction where the record did not disclose that he was "personally informed, precisely or imprecisely, of his right to be presumed innocent." *Id*. In *People v Wilson*, 78 Mich App 307, 308; 259 NW2d 356 (1977), the Court of Appeals reversed the defendant's conviction where the record did not establish that the trial court had advised him of his right to be presumed innocent until proved guilty beyond a reasonable doubt.

This line of precedent firmly establishes that, where a

**8**

trial court has completely failed to advise the defendant of his right to be presumed innocent at the guilty plea hearing, the defendant is entitled to a reversal of his conviction, and either to replead or proceed to trial. In this case, defendant was not informed, in any manner, of his right to be "presumed innocent until proved guilty." MCR 6.302(B)(3)(c).

A waiver of the constitutional right set forth by the rule is supposed to be "an *intentional* relinquishment or abandonment of a *known* right or privilege." *Johnson v Zerbst*, 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938)(emphasis added); see also *People v Siebert*, 450 Mich 500, 510; 537 NW2d 891 (1975). In this case, it is impossible to conclude that defendant made an *intentional* relinquishment of his right at trial to be presumed innocent. *People v Scott*, 381 Mich 143, 147-48; 160 NW2d 878 (1968). This is simply because defendant was never informed at all of this right. Obviously, it could not be determined that he understood that this right was being "forever relinquished" with respect to the charges to which he pleaded guilty. Given the circuit court's omission in this case, we cannot conceivably determine whether the purpose of MCR 6.302 was fulfilled, i.e., whether the defendant's pleas constituted a "knowing and voluntary" waiver of his constitutional rights.[5]

---

[5] Indeed, it appears that one fundamental difference
(continued...)

**9**

I am unpersuaded by the argument of the majority that, while this Court has previously stated that a failure to advise the defendant of his right to be presumed innocent at the guilty plea hearing is error requiring reversal, it is not error if the omitted statements concerning the presumption of innocence were made *at some point* during the criminal justice process, although not, as expressly required, at the guilty plea hearing itself.

The majority observes, in this regard, that "earlier in the day defendant was present while the same judge instructed the *jury* that convened for defendant's trial—on the charge to which he subsequently pleaded guilty—that the defendant was presumed innocent until proven guilty . . . ." Slip op at 2. The majority accords greater weight to this happenstance than to the fact that the judge failed to comply with its obligation that it "must . . . personally" advise defendant of his constitutional rights, and that it must do so *at* the guilty plea hearing. The majority opinion continues in this regard:

In light of the *Guilty Plea Cases*, 395 Mich

_____

[5](...continued)
between "imprecise recitals," which we have deemed appropriate in most instances, and no recital at all, is that, with respect to the former, it can still be determined, however imperfectly, on the appellate review whether a defendant's plea has been made knowingly and voluntarily, whereas with the latter, it is impossible to conclude similarly because there is simply no record evidence at all.

**10**

96; 235 NW2d 132 (1975), the question is whether there was *substantial*, not strict, compliance with the requirements of MCR 6.302.[6]

Despite the trial court's omission of the presumption of innocence during the plea hearing, we hold that defendant "was informed of such constitutional rights and incidents of a trial as reasonable to warrant the conclusion that he understood what a trial is and that by pleading guilty he was knowingly and voluntarily giving up his right to a trial and such rights and incidents." [Slip op at 2, quoting *Guilty Plea Cases*, *supra* at 122 (emphasis added).]

One could hardly imagine a trial proceeding where the *jury* has not been informed that the defendant has a right to enjoy the presumption of innocence. Is it the majority's new rule that where, as might commonly occur, a guilty plea is taken after a defendant has decided to abort a trial, the court need not comply with those aspects of MCR 6.302 that were touched upon in any manner during such trial? Does such a partial trial effectively nullify the requirement that a pleading defendant be apprised of his presumption of innocence? Is the explicit requirement of the rule that the trial court "speak directly"

---

[6] While I agree that the proper inquiry is whether the trial court has "substantially complied" with the court rule, I disagree that a complete failure to make the required statements can nonetheless be characterized as "substantial" compliance. It is not as if, for example, the court had advised the defendant that he had a right to be presumed "not guilty" as opposed to being presumed "innocent." Rather, there has been no compliance at all. As noted, our jurisprudence clearly articulates that there is a substantial difference between "imprecise recitals" and situations in which the required statement advising the defendant of his rights is not made at all. See *Russell*, *supra* at 631; *Ingram*, *supra* at 437-438; *Bender*, *supra* at 578.

**11**

to the defendant satisfied where the court instead "speak[s] directly" to the jury?  Is the  explicit requirement of the rule that the trial court advise the defendant of his rights during the guilty plea hearing satisfied when the defendant overhears these words in the court's statement to the jury? Is the purpose of the rule, that the defendant be advised of his rights when he is most focused upon the implications of his nearly irrevocable decision to convict himself by a guilty plea, fulfilled where he overhears these rights in a context far removed from this moment of irrevocability?[7]

To all of these questions, I answer that it is the defendant, not the members of the jury, who must ultimately consider the gravity of an admission of guilt.  And it is unwarranted to equate, as the majority does here, the defendant's *possible* awareness of these rights when they were brought to the attention of the jury with the defendant himself being personally advised of these rights at the guilty plea hearing, after he has chosen to acknowledge the crime for which he has been charged.[8]  It is not during the jury trial

---

[7] "[A] guilty plea is more than an admission of conduct: it is a conviction." *Boykin*, *supra* at 242.

[8] I emphasize the "possible" awareness of the defendant because, of course, there is no certainty that the defendant was even paying attention to, much less apprehending, any particular statement by the trial court to the jury. Defendant, at the time, may instead have been daydreaming or distracted or confused or consulting with his lawyer.  The
(continued...)

that the defendant has made the momentous decision to admit guilt, and, thus, it is not at that juncture that he must be impressed with the import of his decision to plead guilty and be apprised of the consequences of his decision. Indeed, as this Court stated in the *Guilty Plea Cases*:

> That a defendant may have been tried by a jury in another case or learned of his rights in an earlier plea-taking proceeding would no more negate his right to be informed of the right to and incidents of a trial *at the time a plea of guilty is offered* than would proof that he had seen Perry Mason on television or read Erle Stanley Gardner.
>
> Many defendants have been made aware at one time or another of the right to an incidents of a trial and the consequences of a plea of guilty. Nevertheless, *whatever the personal history of the accused and the quality of his representation*, the appearance of justice and the integrity of the process by which pleas of guilty are offered and accepted require, *in the solemn moment of passage from presumed innocence to conviction and potential imprisonment*, that the judge apprise every defendant of the rights he is waiving and the consequences of his plea and make the other determinations required by the rule. *However, a recital of rights to one defendant by one judge on one day*, may suffice as a recital of rights to that same defendant by the same judge on that same day in another case. [*Id.* at 121-122 (emphasis added).][9]

_____

[8](...continued)
virtue of MCR 6.302 is that, because the court must *personally* address the defendant and take into consideration the nature of his response in determining whether to accept the guilty plea, appellate courts can be reasonably confident that a defendant has intelligently relinquished the full panoply of rights attendant to a jury trial. The appellate courts can have no similar assurance in the instant circumstance.

[9] The implication of the majority's reasoning is that the
(continued...)

**13**

That is, a recital of rights at a *previous guilty plea hearing in the same case* of the rights that a defendant is waiving may suffice to satisfy the requirements of MCR 6.302. However, this Court has never before subscribed to the proposition that the mere fact that a jury, in a partial trial, has been instructed on a defendant's right to be presumed innocent is sufficient to obviate the specific requirements of the court rules.[10]

The fundamental error that pervades the majority opinion is in its reading of *Guilty Plea Cases* and its holding that "there is substantial compliance with the 'personally address'

---

[9](...continued)
"habitual offender," or the defendant who has previously been involved in the criminal justice system, has something less than a full right to be informed, at the guilty plea hearing, of his constitutional rights in accordance with MCR 6.302, by virtue of his presumed familiarity with such rights. Would the majority also conclude that no compliance with the rule is required for the defendant-lawyer or the defendant-judge because of his presumed knowledge of constitutional law? Simple adherence to the express requirements of the rule would avoid this Court having to determine which class of defendants possessed alternative means by which to become informed of the rights that they were relinquishing by a plea of guilty.

[10] See also *People v Jackson*, 71 Mich App 468, 471-72; 248 NW2d 551 (1976) (BURNS, J., dissenting), disagreeing with the majority's holding that advisement of a defendant's rights at a guilty plea hearing earlier in the day constituted sufficient waiver of his rights at a subsequent hearing, and citing the *Guilty Plea Cases*, noting that while the presumption of innocence is not a *Jaworski* right, this Court "has deemed it necessary to continue to require reversal in cases where the guilty-pleading defendant is not advised of that incident of trial."

**14**

requirement . . . even though the judge fails to recite a specific right at the guilty plea hearing . . . ." Slip op at 13. The focus of the majority opinion in this regard is on the language found at 114-115 of *Guilty Plea Cases*. There, the Court addressed the requirement of the rule that the judge "personally address[] the defendant" at the guilty plea hearing. The Court concluded in one of the twenty-four consolidated cases, *Courtney*, that the judge did not "personally advise the defendant of the maximum sentence but in moving to add a second count the prosecutor stated the maximum penalty of five years." *Id*. at 114. The Court next addressed *Bauer*, a case in which "the judge did not state the charge but the prosecutor read the information *on the plea record*." *Id*.(emphasis added).[11] This Court stated:

> These departures do not justify reversal. While it would be better for the judge to cover all the points himself, as long as he assumes the principal burden of imparting the required information, as did the judges in *Courtney* and *Bauer*, the purpose of requiring him personally to address the defendant and in so doing observe his demeanor and responses is achieved.
>
> A guilty plea conviction will not be reversed if the judge engages in the required colloquy but fails to mention an item which the record shows was established through, *for example, an opening statement of or interjection by the prosecutor or defense counsel in the hearing of the judge and*

---

[11] *Courtney* and *Bauer* were the only two cases among the twenty-four cases consolidated in *Guilty Plea Cases* that specifically concerned the "personally address" requirement of MCR 6.302.

> *defendant.  It is proper for the prosecutor or the clerk to read the information in the judge's presence. [Id. at 114-115 (emphasis added).]*

Both *Courtney* and *Bauer* involved the assessment of statements occurring *during the guilty plea hearing* itself in order to determine whether there had been substantial compliance with the rule.  Contrary to the majority opinion, *Guilty Plea Cases* does not rely upon statements or events occurring outside the four corners of the guilty plea hearing.[12]  Therefore, I reject its assertion that "twenty-five years" of precedent establish that the required statements do not have to be made *at the guilty plea hearing*.  Rather, the precedent cited in this opinion establishes that for twenty-five years, since the *Guilty Plea Cases*, Michigan courts have adhered to the principle that a defendant must be informed *at the guilty plea hearing* that he has a right to be presumed innocent.  The majority's extrapolation from focusing upon substantial compliance *at* the guilty plea hearing to focusing upon substantial compliance over some indeterminate period surrounding the hearing runs counter to this well-established precedent.  It also runs counter to the principle that, in order for a guilty plea to be knowing and voluntary, a defendant must be informed of the rights he is surrendering at

---

[12]  One of the reasons for requiring that a guilty plea hearing be conducted in a discrete proceeding is to preserve the overall integrity of the defendant's decision to plead guilty.

**16**

that time, at that hearing at which he finally decides to admit guilt.[13]

The majority seeks to distinguish the right to be presumed innocent until proved guilty from the rights identified in *Jaworski* of which a defendant *must* be informed.[14] However, the mere fact that the *Jaworski* rights have not encompassed the presumption of innocence does not indicate that this right is of any less consequence or should be treated in any different fashion, nor does the majority suggest any rationale for such treatment. In *Russell*, *supra* at 629-630, the Court of Appeals noted that, in the *Guilty Plea Cases*, this Court "elevated the presumption of innocence to the same status as the three *Jaworski* rights."[15] See also

_____

[13] Further, contrary to the majority's statement at 14 that "[t]he dissent has not identified any basis in the rule to support" its position that trial judges must personally advise the defendant at the guilty plea hearing concerning the right to be presumed innocent, I believe that my position is adequately supported by the language of MCR 6.302(B). This rule requires the court to "[s]peak[] directly to the defendant, . . . advise the defendant and determine that the defendant understands . . . ." Only by a great stretch can this rule be read to authorize a situation where, as here, the defendant was never directly addressed in regard to the presumption of innocence.

[14] See *People v Jaworski*, 387 Mich 21, 28-29; 194 NW2d 868 (1972), holding that a defendant *must* be advised of the three constitutional rights enumerated in *Boykin*: (1) the privilege against compulsory self-incrimination, (2) the right to trial by jury, and (3) the right to confront one's accusers.

[15] The United States Supreme Court has stated that "[t]he
(continued...)

**17**

*Johnson v Ohio*, 419 US 924, 926; 95 S Ct 200; 42 L Ed2d 158 (1974) (Douglas, J., dissenting), in which one justice, in dissenting to a denial of certiorari, observed that "[t]he *Boykin* enumeration [of rights to which a pleading defendant is entitled to be advised] was illustrative, not exhaustive."[16]

## V. RESPONSE TO THE CONCURRENCE

I also respectfully disagree with the concurrence that

---

[15](...continued)
presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v Williams*, 425 US 501, 503; 96 S Ct 1691; 48 L Ed 2d 126 (1976). See also Abraham, note 4 *supra* at 105, stating:

> [T]he presumption of the innocence of the accused is transformed into courtroom procedure in the Anglo-Saxon countries. Essential to it are the ancient, basic safeguards inherent in that philosophy of the law, safeguards which, to a greater or lesser degree, are fundamental to the notions of liberty and justice that pervade the political system of the liberal democratic West. Among these are the privilege against compulsory self-incrimination; the right to cross-examine witnesses; the writ of habeas corpus . . . perhaps the most basic right of all, dating at least to the Magna Carta (1215)—and many others in the same general category.

Notably, the rights referred to in this passage along with the presumption of innocence, are the *Jaworski* rights.

[16] It is not my view that the trial court is required during the guilty plea hearing to "strictly" comply with the obligation that a defendant be advised of his right to be presumed innocent, or with regard to any other particular obligation, beyond what is required by *Jaworski*. I do believe, however, that the extent of a court's compliance with the requirements of MCR 6.302 must be assessed in terms of what has occurred *at the guilty plea hearing*.

**18**

advising the defendant at his guilty plea hearing that he was relinquishing the right to have the jury decide whether his guilt could be proven beyond a reasonable doubt sufficiently imparted the idea that he was also relinquishing his right to be presumed innocent. MCR 6.302(B)(3)(c) requires a statement to the defendant that the judge, jury, and prosecutor are to presume his innocence until his guilt is proven. MCR 6.302(B)(3)(d) requires a separate statement informing the defendant that it is the prosecutor's burden to prove his guilt beyond a reasonable doubt. Thus, subrules (c) and (d) are distinct requirements of the guilty plea hearing.[17]

---

[17] In note 10, the majority, perhaps inadvertently, adopts the premises of the concurrence that the "beyond a reasonable doubt" instruction embodied in subrule (3)(d) is sufficiently equivalent to the "presumption of innocence" instruction contained in subrule (3)(c) to warrant a finding that the former instruction suffices in lieu of the latter. This is because *Russell* approved the instruction given to the defendant, during the guilty plea hearing, that the "[p]rosecutor must prove you guilty beyond a reasonable doubt" even though, as the majority observes, the judge "never spoke the precise words 'presumed innocent.'" *Russell*, *supra* at 631. Yet, as explained here, the two instructions clearly are distinct, both conceptually and in the specific context of the language of MCR 6.302. As *Guilty Plea Cases* made clear, and as evidenced by the change in the court rules, see GCR 1963, 785.7(1)(d)(ii) (which combined the two instructions), and GCR 1963, 785.7(1)(g)(iii), (iv) (which separated the two instructions), the presumption of innocence is a distinct right that should always be stated in advising the defendant at the guilty plea hearing.

Concerning the other cases referenced by the majority in that note, as the dissent has already observed, (a) in *Jackson*, the defendant was informed of his right to be presumed innocent at a guilty plea hearing; (b) in *Ingram*,
(continued...)

**19**

The distinction between the presumption of innocence and the "reasonable doubt" standards has been extensively discussed by the United States Supreme Court. *Coffin v United States, supra* at 460-461 (holding that a trial judge's failure to instruct the jury on the presumption of innocence required reversal, notwithstanding the adequacy of instructions provided on the closely related reasonable doubt standard). In *Coffin*, the Court traced the "presumption of innocence" back to ancient law, and stated of the argument that "proof beyond a reasonable doubt" and "presumption of innocence" are equivalent:

> To say that the one is the equivalent of the other is therefore to say that legal evidence can be excluded from the jury, and that such exclusion may be cured by instructing them correctly in regard to the method by which they are required to reach their conclusion upon the proof actually before them; in other words, that the exclusion of an important element of proof can be justified by correctly instructing as to the proof admitted. The evolution of the principle of the presumption of innocence, and its resultant, the doctrine of reasonable doubt, make more apparent the correctness of these views, and indicate the necessity of enforcing the one in order that the

---

[17](...continued) defendant was instructed on the presumption of innocence at his guilty plea hearing; (c) in *Bender, supra* at 579, defendant's conviction was reversed because the defendant "was not personally informed of his right to be presumed innocent"; and (d) in *Heintzelman*, *Mitchell*, and *Wilson,* the Court of Appeals held that a defendant must be given the required instruction.

other may continue to exist. [*Id.* at 460.][18]

Subsequently, in *Taylor v Kentucky*, 436 US 478, 484; 98 S Ct 1930; 56 L Ed2d 468 (1978), the Supreme Court observed:

> [T]he requirement that a jury be informed both of the presumption of innocence and of the requirement of proof beyond a reasonable doubt] derives from a perceived salutary effect upon lay

---

[18] See also Chambers, *Reasonable certainty and reasonable doubt*, 81 Marq L R 655, 671, 674 (1998), stating:

> The reasonable doubt standard and the presumption of innocence work in tandem to help assure that defendants are convicted fairly. Reasonable doubt requires that jurors be thoroughly convinced of a defendant's guilt before conviction. The presumption of innocence effectively requires that jurors begin and end their inquiry with a skeptical mindset.

> * * *

> That reasonable doubt and the presumption of innocence are related is undeniable. Understanding the relationship between them requires recognizing that the pairing of the two concepts forces a juror to move from a subjective state of disbelief regarding the prosecution's claims of defendant's guilt to a subjective state of justified certainty regarding defendant's guilt. That the juror must be so transformed ensures that the evidence used to convict a defendant will be powerful. Reasonable doubt requires only that a juror be subjectively certain that defendant committed the crime before voting for guilt. A juror can reach a subjective, but possibly unjustified, state of certainty in the absence of a presumption of innocence. The presumption of innocence requires that jurors think more deeply than they otherwise would about whether all reasonable doubts have been eliminated before convicting a defendant

See also Diamond, Note, *Reasonable doubt: To define, or not to define*, 90 Colum L R 1716, 1730-1731 (1990).

**21**

jurors. While the legal scholar may understand that the presumption of innocence and the prosecution's burden of proof are logically similar, the ordinary citizen well may draw significant additional guidance from an instruction on the presumption of innocence.

In my judgment, this reasoning applies with equal force to the guilty plea hearing, where a criminal defendant is faced with the decision to admit or deny guilt. Omitting the instruction on the presumption of innocence deprives such a defendant of an opportunity to fully assess his own circumstances and intelligently reflect upon his options.

While a scholar of the law may well recognize the close philosophical and constitutional connection between (indeed the inextricability of) the right to be presumed innocent and the right to be proved guilty beyond a reasonable doubt, MCR 6.302 understandably sets these apart as discrete rights to be explained to the pleading defendant. The rules do so because, considered together, these formulations explain more thoroughly and more clearly to the nonscholar, to the defendant, the full measure of the rights that he is relinquishing by his guilty plea.[19]

### CONCLUSION

The *Guilty Plea Cases* established that a trial court's

---

[19] By the concurrence's analysis, the trial court could just as well advise the defendant that he is entitled to "due process" of law, and have such an instruction suffice to satisfy MCR 6.302 in lieu of instructions concerning the individual components of due process set forth in the rule.

failure to comply with MCR 6.302 and advise the defendant of his right to be presumed innocent constituted error requiring reversal. Until today, this Court has not wavered from adherence to this principle. In my judgment, the trial court is obligated under the Michigan rule to inform the defendant of his presumption of innocence at the guilty plea hearing, and the extent to which there has been "substantial compliance" with this obligation must be assessed in terms of what occurred at such hearing. Because there was a complete failure on the part of the trial court in this case to comply with MCR 6.302 by advising defendant, at his guilty plea hearing, of his right to be presumed innocent, I would affirm the Court of Appeals decision reversing defendant's conviction.

CAVANAGH and KELLY, JJ., concurred with MARKMAN, J.