*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

MICHAEL RYAN WEINSTEIN,

        Defendant-Appellee.

UNPUBLISHED
June 10, 2021

No. 352858
Livingston Circuit Court
LC No. 14-022342-FH

Before: GADOLA, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Plaintiff, the People of the State of Michigan, appeals on leave granted[1] the order of the trial court granting the request of defendant, Michael Ryan Weinstein, to dismiss his felony conviction of assault by strangulation, MCL 750.84(1)(b), pursuant to a plea agreement between the parties. We reverse and remand.

## I. FACTS

The charges against defendant arose from a complaint of domestic violence by defendant's wife, Amanda Weinstein. On the night of October 24, 2014, police were dispatched to the home of defendant's brother-in-law, who had allowed defendant, Amanda, and their three children to move into his home temporarily because the family was homeless, Amanda was pregnant, and the couple and their children had been living in their van. Amanda reported to police that when defendant arrived home that evening, she and defendant quarreled. When she refused to give him the keys to their van, he broke a window of the van with a brick, searched the van, and took the money from her wallet. When she tried to stop him, he twisted her arm and pushed her, and she fell against a wooden post. He then grabbed her by the neck and began choking her. After defendant released her, the police were called, and defendant was arrested.

---

[1] *People v Weinstein*, unpublished order of the Court of Appeals, entered May 29, 2020 (Docket No. 352858).

On February 6, 2015, defendant pleaded no contest to one count of assault by strangulation, MCL 750.84(1)(b), and one count of domestic violence, second offense, MCL 750.81(3). The Special Attachment to the guilty plea form stated, in relevant part:

The Defendant will plead no contest to both counts as charged in the Information, as well as all enhancements. Defendant will be granted 5 years['] probation, with no early discharge or program time. The terms and conditions of the probation shall include:

- The Defendant shall successfully complete the LACASA Batterer's Intervention Program.

- The Defendant shall undergo a mental health evaluation and comply with all treatment recommendations.

- Any other terms as set by the court.

If Defendant is in complete compliance with all terms and conditions, and successfully completes the probationary period, the People of the State of Michigan agree to dismiss the conviction for Count 1: Assault by Strangulation. The conviction for Count II: Domestic Violence Second Offense would remain, resulting in an effective reduction to a misdemeanor offense.

This probation shall be zero tolerance, meaning any failure to comply with any of the above terms or conditions shall result in a loss of the opportunity to earn the reduction, as well as subject the defendant to further resentencing as may be appropriate.

At the final settlement conference, the prosecution confirmed the parties' agreement, stating the terms of the plea agreement consistent with the written agreement. The trial court then advised defendant:

*The Court*: . . . This probation shall be zero tolerance, meaning any failure to comply with any of the above terms or the terms I placed on this record, or the conditions that are contained in this record shall result in the loss of the opportunity to earn the reduction, as well as subject you to any further sentencing as may be appropriate, understood?

*The Defendant*: Yes.

The Order of Probation entered by the trial court stated the terms of probation imposed by the trial court, including the requirement that defendant immediately notify his probation officer of any change of address. At the request of Amanda Weinstein, the trial court permitted defendant to have contact with her and the children, but not at her apartment. The trial court ordered that defendant was not to be within 500 feet of Amanda Weinstein's residence, and explained to defendant that "you may not have any physical contact with Amanda Weinstein at that apartment. I want to make sure that for the time being that she's got a safe haven, which is her apartment with

the kids. You can see those kids somewhere else, but I want you staying out of there, as that's the safest circumstance."

On May 13, 2015, less than three months after sentencing, defendant was charged with a probation violation, specifically, with failing to notify the probation department regarding his change of address and being with Amanda Weinstein within 500 feet of her home. He pleaded guilty to the violations, explaining that he left the address that he had given to his probation officer, and had been "staying in the woods and staying at friends['] houses," but had not reported this to his probation officer. He also admitted that he had been at Amanda's home. Defense counsel explained at the hearing that defendant had joined Amanda at her home after their youngest child was born because the family had been in chaos, and defendant was assisting with the children. The prosecutor clarified that Child Protective Services (CPS) had become involved with the family and reported to the probation department that defendant was living in the home. The trial court determined that defendant had violated the terms of his probation and sentenced defendant to six months in jail, with credit for time served, and with his probation to continue thereafter.

On May 24, 2018, defendant moved for early release from probation. The prosecutor opposed the motion because a term of the plea agreement was five years' probation with no early release. During the hearing on the motion, defendant referred to the condition of the plea agreement that the felony be dismissed upon his completion of probation. The prosecutor responded to this comment by stating "[w]ell, the violation [of probation] would have dispensed with his ability to have the misdemeanor [sic] reduced." The trial court denied the motion for early release, and explained to defendant that the parties were bound by the terms of the plea agreement.

On January 21, 2020, defendant moved for dismissal of the felony assault conviction upon the anticipated completion of his probation. At the hearing on the motion, the prosecution argued that defendant was not entitled to that benefit of the plea agreement because of his May 2015 probation violation. The record indicates some confusion at the hearing regarding the extent of defendant's 2015 probation violation. The following exchange occurred:

*The Court*: This is it on the violation? The failure to notify the agent of the change of address?

*The Defendant*: I didn't have an address at the time.

* * *

*The Court*: All right. What I'm gonna do is this. The ah – in looking at these papers, I am going to grant your request to have this reduced, because the violation is not for any assaultive bad conduct. It's untruthful with the probation agent, in that he failed to notify the agent of a[n] address change. As for what was being charged, which was, you know what you were being punished for was the domestic violence and assault. Seems like your behavior has been good from that point. Did you complete all the counseling you were supposed to do?

*The Defendant*: Yes, your Honor.

*The Court*:  All right.  Um, so you completed the LACASA Batter[er']s Intervention Program?

*The Defendant*:  Yes.

*The Court*:  All right.  Did you complete the – did you undergo and complete the mental health and comply with all treatment recommendations?

*The Defendant*:  Yes, I'm still in counseling.

*The Court*: All right.  All right, well those are the specific terms that were set out there.  You got that done and your behavior as far as what brought you here has been good.  I respect if your wife had some issues that were unhealthy like that, I think ah, the sprit and the -- have been complied with. . . .

The trial court entered an order granting defendant's request to dismiss the felony assault conviction.  This Court thereafter granted the prosecution leave to appeal the trial court's order.

## II.  DISCUSSION

The prosecution contends that the trial court erred by dismissing the felony assault conviction.  The plea agreement between the parties permitted the dismissal of the felony conviction only if defendant completed his probation with no violation of the plea agreement, a term of which was total compliance with all terms of probation imposed by the trial court.  Because defendant violated the terms of his probation, he failed to comply with the terms of the plea agreement and therefore was not entitled to dismissal of the felony conviction.  We agree.

"Plea agreements are an 'essential component of the efficient administration of justice.' " *People v Rydzewski*, 331 Mich App 126, 138; 951 NW2d 356 (2020), quoting *People v Martinez*, 307 Mich App 641, 651; 861 NW2d 905 (2014).  The basis of plea bargaining is the broad discretion of the prosecutor in determining what charges to bring.  *Id*. at 651.  The prosecution has a "constitutional interest in being entrusted with the authority to charge defendants.  If a court could 'maintain its acceptance of the plea over the prosecution's objection, it would effectively assume the prosecutor's constitutional authority to determine the charge or charges a defendant will face.' " *People v Smith*, 502 Mich 624, 646; 918 NW2d 718 (2018) (opinion by VIVIANO, J.).

This Court has consistently held that a plea bargain, although analogous to a contract, is "not governed by the standards of commerce but must comport with the interests of justice in the administration of criminal laws."  *Martinez*, 307 Mich App at 651, citing *People v Reagan*, 395 Mich 306, 314; 235 NW2d 581 (1975).  Because a plea bargain is more than just a contract between two parties, the trial court's interest is to see that justice is done.  *People v Siebert*, 450 Mich 500, 509; 537 NW2d 891 (1995) (opinion by BOYLE, J.).  However, although a plea agreement must be reviewed within the context of serving the administration of justice, "it is one thing to review a plea deal in that context and another to refashion a plea deal to further what that court may think is the goal of criminal justice in a given case."  *Smith*, 502 Mich at 647 n 76.

This Court has applied the clear error standard to a trial court's decision to enforce a plea agreement.  See *People v Abrams*, 204 Mich App 667, 672-673; 516 NW2d 80 (1994).  Because

contract principles apply by analogy to plea agreements, *People v Swirles (After Remand)*, 218 Mich App 133, 135; 553 NW2d 357 (1996), the interpretation of a plea agreement is reviewed by this Court de novo. See *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). We review any factual findings of the trial court for clear error. MCR 2.613(C); *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

In this case, there is no dispute that a valid plea agreement existed between the parties and no dispute that defendant failed to comply with the terms of the plea agreement because he violated his probation. The only dispute is whether defendant is entitled to specific enforcement of a benefit of the plea agreement even though he failed to comply with the agreement's terms. On appeal, the prosecution asserts that defendant is not entitled to specific enforcement of the plea agreement, and relies in part on this Court's decision in *People v Walton*, 176 Mich App 821; 440 NW2d 114 (1989).[2]

In *Walton*, the prosecutor charged the defendant with burning of insured property. The parties entered into a plea agreement that allowed the defendant to plead to a misdemeanor if the defendant cooperated in an investigation being conducted by a police unit known as COMET. The prosecutor thereafter determined that the defendant had not fully complied with the agreement to cooperate, and the defendant filed a motion for specific performance of the plea agreement. The trial court granted the defendant's motion to enforce the plea agreement, finding that although the defendant had not fully cooperated with the COMET investigation, he had cooperated with other investigative agencies and therefore had substantially complied with the plea agreement. *Walton*, 176 Mich App at 824.

This Court reversed the trial court's decision in *Walton*, holding that a plea agreement "must be reviewed within the context of its function to serve the administration of criminal justice," as well as contractual principles. *Walton*, 176 Mich App at 825. This Court did not specifically reach the issue whether the contractual principle of substantial compliance applied to plea agreements, holding that the record in that case did not support the trial court's finding that the defendant had substantially complied with the agreement. *Id*. at 825-826. The prosecutor had not agreed that the defendant's cooperation in investigations by other agencies would fulfill the defendant's obligation under the plea agreement; accordingly, the defendant's cooperation with other agencies could not support the trial court's finding that the defendant fulfilled his obligation under the plea agreement. *Id*. at 825. This Court explained:

> The circuit court specifically found that defendant did not cooperate with COMET. On the basis of this finding, the circuit court should have concluded that

---

[2] MCR 7.215(J)(1) requires this Court to follow a rule of law established by a prior published decision of this Court issued on or after November 1, 1990, that has not been reversed or modified. That court rule does not state, however, that older cases of this Court are not precedentially binding. This Court has observed that published cases of this Court issued before November 1, 1990, are regarded as retaining meaningful authority. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018). In addition, MCR 7.215(C)(2) provides that a published opinion of this Court has precedential affect under the rule of stare decisis. *People v Bensch*, 328 Mich App 1, 7 n 6; 935 NW2d 382 (2019).

defendant did not live up to his part of the bargain and, hence, had no right to specific enforcement of the prosecutor's obligation to amend the information so as to allow defendant to plead guilty to a misdemeanor offense. Compare *People v Olsen*, 155 Mich App 294; 399 NW2d 66 (1986); *People v Acosta*, 143 Mich App 95, 98-99; 371 NW2d 484 (1985) (a defendant has no right to specific performance where he fails to meet an agreed-upon condition precedent). The circuit court's failure to make this finding was clearly erroneous. MCR 2.613(C). [*Walton*, 176 Mich App at 825-826.]

Similarly, in *Abrams*, 204 Mich App at 672, this Court held that the trial court erred by dismissing a charge against the defendant when he failed to comply with the plea agreement. There, the defendant was charged with drug-related offenses, and entered into a plea agreement providing that he cooperate in the investigation and prosecution of others involved in drug trafficking. The agreement provided that if the defendant violated any part of the agreement the entire agreement would be void. Although the defendant assisted with the investigation and prosecutions, he violated other provisions of the agreement by engaging in criminal activity. As a result, the prosecutor charged the defendant with the offense underlying the plea agreement. The trial court granted the defendant's motion to quash the information and dismiss the charges, finding essentially that the defendant had substantially complied with the plea agreement by cooperating extensively with law enforcement and concluding that "the administration of justice was well served by this agreement." *Id*. at 671.

On appeal, this Court held that the trial court erred by dismissing the charges against the defendant, concluding that "the administration of criminal justice was best served by allowing the prosecution to pursue its case against defendant for his breach of the agreement. . . . The trial court clearly erred in finding otherwise." *Abrams*, 204 Mich App at 672-673. In accord, *People v Kean*, 204 Mich App 533, 535-536; 516 NW2d 128 (1994) (because the defendant violated the terms of his plea agreement he was not entitled to the benefit of the bargain of the agreement).

In this case, the trial court properly considered the interests of justice when resolving this issue, but failed to follow this Court's decisions in *Walton* and *Abrams*, which held under similar circumstances that the interests of justice were not served by the defendant receiving the benefit of a plea bargain after the defendant failed to comply with a condition precedent to receiving the benefit. In doing so, the trial court overlooked the logical conclusion that it would not serve the ends of justice to allow defendants to receive the benefit of their plea agreements despite not having lived up to the terms of those agreements. Rather, allowing the benefit of the bargain under such circumstances might incentivize defendants to disregard certain conditions and would place courts in the unenviable position of attempting to determine which violations are "serious enough" to warrant enforcement of the agreement terms.

Here, the plea agreement specifically provides that defendant is only entitled to the dismissal of the felony assault conviction if he completed five years' probation with full compliance with the plea agreement, including full compliance with all court-imposed terms of probation. The Special Attachment to the guilty plea form described the agreement as "zero tolerance," and it was referred to in this way by both the prosecution and the trial court. The parties do not dispute that defendant violated his probation; he moved into his wife's home contrary to the probation terms the trial court ordered, and the trial court determined that this was a violation

-6-

of his probation.[3]  Nonetheless, the trial court found that defendant had complied with the "spirit" of the plea agreement because his probation violation was based not upon assaultive behavior but upon being untruthful to his probation officer about his address.[4]  As in *Walton* and *Abrams*, we conclude that the trial court in this case erred by ordering specific performance of the plea agreement when defendant did not qualify to receive that benefit because he had failed to comply with his obligations under the plea agreement.  Defendant's failure in this case to fully comply with the terms of the plea agreement was a failure to fulfill a condition precedent to receiving the benefit of that bargain.

Defendant argues, however, that the prosecutor waived his right to raise defendant's noncompliance with the plea agreement because the prosecutor did not raise this argument in 2015 when the trial court sentenced defendant for violating his probation.  Waiver is "the intentional relinquishment or abandonment of a known right." *People v Buie*, 491 Mich 294, 305; 817 NW2d 33 (2012) (quotation marks and citation omitted).  "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. at 306 (quotation marks and citation omitted).

In this case, at the time the trial court sentenced defendant to six months in jail for violating the terms of his probation, the trial court stated that after the jail term the probation would continue "with all original conditions."  Defendant argues that the trial court's statement was a determination by the trial court that the plea agreement was still in effect, specifically the provision regarding potential dismissal of the felony assault conviction upon completion of the five years' probation.  This argument conflates the terms of probation imposed upon defendant by the trial court with the terms of the plea agreement established by the parties.  The trial court's order that probation would continue "with all original conditions" appears to refer to the conditions of probation, not the terms of the plea agreement.

Defendant argues, however, that by not specifically challenging the trial court's statement in 2015 that probation would continue with "all original conditions," the prosecutor was waiving the zero-tolerance provision of the plea agreement.  We disagree.  The plea agreement provided that defendant would plead no contest to the two charges and would be sentenced to five years' probation.  The agreement provided the additional benefit to defendant that he also could earn

---

[3] We observe that when sentencing defendant for his probation violation, the trial court did not find that defendant had complied with the "spirit" of the probation terms imposed by the trial court, nor did the trial court deem defendant's violation insignificant.  Rather, the trial court rightly found that even though defendant's conduct had not been assaultive, he nonetheless had violated the trial court's order of probation, earning the consequence of jail time.

[4] The record in this case does not support the trial court's finding that defendant's only probation violation was a failure to report his change of address.  Defendant was arrested and charged after he violently attacked his pregnant wife.  He received probation under the terms of the plea agreement, and the trial court specifically cautioned defendant that a term of his probation was that he not come within 500 feet of his wife's home.  Less than three months after sentencing, CPS reported that defendant was living in his wife's home.

dismissal of the felony assault conviction upon completion of the five years' probation if he fully complied with the terms of the agreement with no violations. At the time defendant was sentenced in 2015 for his probation violation, the defendant's 2020 request to enforce the additional provision of the plea agreement was not before the trial court; in 2015, defendant had not completed his probation and was not attempting to enforce the plea agreement, and the trial court did not rule on the enforceability of the plea agreement. The prosecutor therefore did not waive the challenge to enforcement of the plea agreement by failing to raise it in 2015.[5]

The trial court erred by dismissing the felony assault conviction. The record demonstrates that defendant violated his probation and thereby violated the plea agreement. Although the trial court could consider the interests of justice as well as contractual principles when enforcing the plea agreement, the interests of justice are not served by permitting defendant to receive the benefit of a plea agreement with which he has not complied.

Reversed and remanded to the trial court for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ David H. Sawyer
/s/ Michael J. Riordan

---

[5] Although not determinative here, we note that the prosecutor raised this challenge in 2018 during the hearing on defendant's motion for early release from probation. During the hearing, defendant referred to the condition of the plea agreement that the felony assault charge would be dismissed upon his completion of probation. The prosecutor responded to this comment, asserting that defendant's 2015 probation violation would preclude defendant from obtaining that benefit. Thus, although it was not required that the prosecutor challenge the enforcement of the plea agreement before defendant attempted to enforce the agreement, the prosecutor advised defendant and the trial court as early as 2018 that he considered defendant's 2015 probation violation to have violated the plea agreement.